## GAY *v*. THE STATE.

794

*B. L. Weston* and *H. B. Edwards,* for plaintiff in error.

*George M. Napier, attorney-general, H. C. Morgan, solicitor-general, T. R. Gress, assistant attorney-general, E. D. Rivers, H. W. Nelson, T. E. Miller, R. M. Penland,* and *M. E. Johnson,* contra.

Hill, J.   M. A. Gay was indicted for the murder of J. T. Howell, and upon the trial he was convicted without recommendation, and was sentenced to be electrocuted.   He filed a motion for a new trial, which was overruled, and he excepted.

■   The motion for new trial contains five special grounds, the last two of which were not approved without qualification, and can not be considered.

■   One ground of the motion complains of the following charge of the court:   "The law puts upon the defendant, where he admits the killing, the burden to satisfy the jury that he was justified under some rule of law, unless the admissions, together with the evidence in the case against him, or the statement of the defendant, shows justification or mitigation."   It is insisted that this charge was error, because at the time the deceased, Tom Howell, was killed by the defendant, no one was present but these two.   There was no eye-witness to the homicide.   The State offered only circumstantial evidence as to what transpired at the time of the homicide.   The defendant in his statement admitted the killing, and said that it was done in self-defense and to save his own life.   It is insisted that under the evidence submitted the court should have charged:   "An admission, without any explanation as to why the killing was done, would give rise to a presumption of malice.   No such presumption could be drawn from a statement which admits the homicide but at the same time justifies the act.   That part of the statement which if unexplained would criminate, although it could be received as evidence of the fact which it admitted, could not, to the exclusion of another part which qualified and explained it, create a

presumption that accused was actuated by malice and was guilty of murder." This assignment of error is without merit. The charge as given by the court was a correct statement of the law, and it gave to the defendant every right that he was entitled to under the law. *Roseboro* v. *State,* 127 *Ga.* 826 (56 S. E. 991). See also *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934).

■ The second special ground of the motion alleges error in the following charge: "If you believe, gentlemen, from all the facts and circumstances of the case, including the defendant's statement, that there was a mutual intention to fight, that there was a mutual combat, that the defendant killed the deceased, then, in order for the defendant to claim self-defense, it must appear that the danger was so urgent and pressing at the time of the killing that in order to save his own life the killing of the deceased was absolutely necessary; and it must also appear that the person killed was the assailant, or that the slayer had in good faith endeavored to decline any further struggle [before] the mortal blow was given." It is insisted that this charge was error, (1) because no evidence was introduced by the State from which an inference could be drawn that there was a mutual intention to fight or that there was a mutual combat; the defendant offered no evidence that there was a mutual intention to fight or that there was a mutual combat, and the statement of the defendant clearly denied any mutual intention to fight, or that there was a mutual combat, and no facts and circumstances in the case indicate a mutual combat; and the defendant in his statement alleged that he killed in self-defense, in protection of his life, and in his defense relied upon justifiable homicide under sections 70 and 71 of the Penal Code of Georgia, and the law of mutual combat should not have been charged; (2) because the court charged the jury as set out, without instructing them that the charge would be applicable only in the event that the jury found that the accused and the deceased were engaged in mutual combat. This assignment of error is without merit. The evidence shows that various threats had been made by the defendant against the life of the deceased shortly before the homicide, these threats being testified to by six or seven witnesses. L. Culpepper testified that he was a hardware clerk, and that he sold to a described person unknown to him a pistol found by the body of

the deceased. It was contended that a state of bad feeling existed
on the part of the deceased toward the defendant. The defendant
in his statement said: "I was night-watching out here at the
fair, and I night-watched down there three nights. I went home
Thursday morning and went to bed, as usual. About 10 o'clock
or a quarter after 10, I heard somebody come and push the door,
as it shuts tight, to the room where I was resting. I woke up
and looked around and saw that it was Tom [Howell]. I told him
to come in, and he said he wanted to talk with me, and I asked
him to have a seat on the side of the bed. He complained about
it being chilly, pretty quick after he went to talking. I told him
there was a fire, I guessed, in the other room where my wife and the
children had been that morning, and we would go in there if he was
cold; and I got up and went across the hall in the other room and
got some wood and lightwood chunks and splinters and built a fire
and sat down, and we began to talk, and he raised the subject
about the hogs. He said there had been some damn smart talk
done about the hogs as well as the place, and he had come there
that morning to settle it; and I looked around, and as I did he
was pulling his pistol, and I raised from my chair and gathered
my shotgun, and as I brought the gun up like this and shot the
gun, just as I put my hand on it he shot at me, and I raised with
it like this and fired, and as I pulled the gun up like that he ducked.
He was sitting in this chair right here; he ducked like that as I
shot. I saw he was determined to kill me, and I shot him, strik-
ing him along here, and he fell out in front of me. I was sorry
that I done it, of course, but I done it to protect myself. I was at
home in my own house when he come in and woke me up, and I
believed it was my duty to do so; and I went out and cranked
my car and came to town and related the news to the sheriff,
and we went out there, and he ordered me put in jail." From this
and other evidence in the record the court was authorized to charge
on the subject of mutual combat. See *Franklin* v. *State,* 146
*Ga.* 40 (90 S. E. 480); *Slocumb* v. *State,* 157 *Ga.* 131 (121 S. E.
116).; *Bailey* v. *State,* 148 *Ga.* 401 (96 S. E. 862); *Tate* v. *State,*
46 *Ga.* 148, 157; *McMillan* v. *State,* 35 *Ga.* 54, 60; *Buchanan* v.
*State,* 153 *Ga.* 866 (113 S. E. 87). The trial judge, in addition
to what is set out above, in instructing the jury on the doctrine of
mutual combat qualified the charge by the use of the following

language: "If you believe, gentlemen, that from all the facts and circumstances of the case, including the defendant's statement, that there was a mutual intention to fight, that there was a mutual combat, that the defendant killed the deceased, then in order for the defendant to claim self-defense it must appear that the danger was so urgent and pressing at the time of the killing that in order to save his own life the killing of the deceased was absolutely necessary; and it must also appear that the person killed was the assailant, or that the slayer had in good faith endeavored to decline any further struggle before the mortal blow was given."

■ Special ground 3 of the motion for new trial complains of the following charge to the jury: "It is the contention of the defendant in this case that he shot and killed the deceased in self-defense, that is, to save his own life; and in this connection I charge you that justifiable homicide is the killing of a human being in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either, or against any person who manifestly intends or endeavors, in a riotous and tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling therein. The term 'felony,' gentlemen, as used in this connection, means an offense for which the offender on conviction would be subject either to the death penalty or to imprisonment in the penitentiary, and not otherwise. Now, gentlemen, if you believe beyond a reasonable doubt that this defendant, in the county of Lanier, and the State of Georgia, at any time prior to the date of the finding and return of this indictment into court by the grand jury, did kill the person named in the indictment in the manner charged, by the use of a weapon as charged, and that as used at the time was likely to kill, and you should further believe that at the time of the killing this defendant was in no danger whatever from the person killed, that the person killed was not committing any assault upon him whatsoever, but that the killing was intentional, without justification, excuse, or mitigation, then and in that event, gentlemen, you would be authorized to find the defendant guilty of the offense of murder." It is insisted that the court erred in charging Penal Code § 70, and the other part of the charge excepted to, without charging § 71, because the charge excepted to was to the effect

that there must be danger before the defendant could rely upon the defense of self-defense in the protection of his own life; whereas the true rule of law is to the contrary, and the court should have charged the jury that "If it is shown that when the killing occurred the circumstances under which it occurred were sufficient to excite the fears of a reasonable man that his life was in imminent peril, or that an offense was about to be committed against him by the person killed, amounting to a felony, and in striking the mortal blow he really acted under the influence of such fears and not in a spirit of revenge, the homicide is justifiable, whether it was in fact really necessary for him to kill in order to save his own life or not, or whether there was then really impending danger or not." There is no evidence in the record to authorize a charge on the doctrine of reasonable fears; and this court has held that where the evidence does not warrant a charge as to reasonable fears, the failure of the court to charge upon that subject is not error. *Oneal* v. *State*, 47 *Ga.* 229 (4). The defendant in his statement to the jury said: "And I looked around, and as I did he was pulling his pistol; and I raised from my chair and gathered my shotgun, and as I brought the gun up like this and shot the gun, just as I put my hand on it he shot at me; . . and when he pulled it [the pistol] I turned for my gun which leant about ten foot away leaning against the wardrobe, and he shot at me." From the foregoing statement it appears that the defendant acted, not upon an apparent danger or upon reasonable fears, but after an actual attack was being made upon him by the deceased with a loaded pistol. "It is error, upon the trial of one indicted for murder, so to instruct the jury as to make the defense of justifiable homicide interposed by the defendant depend both upon an actual necessity to kill and upon the sufficiency of the circumstances to justify the fears of a reasonable man that it was necessary for him to kill the deceased in order to save his own life." See *Powers* v. *State*, 138 *Ga.* 624 (4) (75 S. E. 651); *Smith* v. *State*, 147 *Ga.* 689 (4) (95 S. E. 281, 15 A. L. R. 490).

■ The evidence authorized the verdict, and the judge did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Gilbert, J., who dissent from the ruling in the third division of the decision.*