## BAILEY *v.* THE STATE.

1. Where on the trial of a person charged with murder the evidence or the prisoner's statement is sufficient to show mutual combat between the deceased and the accused at the time of the homicide, the judge may properly give in charge to the jury the provisions of the Penal Code, § 73.

(a) Mutual combat sufficiently appears where it is shown that there was a mutual intent by the accused and the deceased to fight and one or more blows were struck.

(b) The evidence authorized the judge to give in charge to the jury the provisions of the Penal Code, § 73.

2. The evidence was sufficient to support the verdict, and there was no error in refusing a new trial.

No. 688. SEPTEMBER 14, 1918.

Indictment for murder. Before Judge Howard. Muscogee superior court. October 20, 1918.

*D. L. Parmer, Love & Fort,* and *Richard Terry,* for plaintiff in error.

*Clifford Walker, attorney-general, C. F. McLaughlin, solicitor-general,* and *M. C. Bennet,* contra.

ATKINSON, J. On the trial of a defendant charged with murder, the judge, in the course of his instructions to the jury, read Penal Code § 73, which is as follows: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." The judge further instructed the jury that this provision of the law should

26

not be applied, unless the jury should believe from the evidence that the accused and the deceased were engaged in mutual combat at the time of the homicide. Error was assigned upon the charge, on the ground: (1) that there was no evidence to authorize a finding that the accused and the deceased were engaged in mutual combat; (2) that it placed an additional and unwarranted burden upon the defendant to show that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary, and that the person killed was the assailant, or that the defendant, being the assailant, had really and in good faith endeavored to decline any further struggle before the mortal blow was given.

1. It was held in *Mills* v. *State,* 133 *Ga.* 155 (65 S. E. 368): "When the defendant's statement authorizes an inference that the deceased was slain while he and the defendant were engaged in mutual combat, it is not error to give in charge Penal Code § 73." And conversely it has been held that where there is nothing in the evidence or in the statement of the accused to show that there was any mutual combat, it is erroneous to give that section in charge. *Mell* v. *State,* 112 *Ga.* 78 (37 S. E. 121). It may be stated, therefore, that where the evidence or the prisoner's statement authorizes an inference that the accused and the deceased were engaged in mutual combat at the time of the homicide, it is proper to give Penal Code § 73 in charge to the jury. Was the evidence sufficient to authorize the jury to find that the defendant and deceased were engaged in mutual combat at the time of the homicide? In *Tate* v. *State,* 46 *Ga.* 148, it was said on page 158: "We think the judge was in error in saying there must be mutual blows to constitute a mutual combat. There must be a mutual intent to fight. But we think if this exists, and but one blow be stricken, that the mutual combat exists, even though the first blow kills or disables one of the parties." Tested by that rule, it was held that the facts in that case did not present an instance of mutual combat. In discussing the facts, the court said: "The deceased showed no sign of a disposition to fight. He denied taking up the quarrel of the woman. He stood at his place; he had, or showed, no arms. Indeed, he seems to have been very slow in getting ready to defend himself, since the defendant had about twenty steps to go, and got to him and struck him before he got the doubletree picked up, and in a position even to defend himself. Had he got the first

blow and that blow proved fatal, the killing would by him have clearly been justifiable. He sees a man coming at him with an ax, cursing him, threatening to show him what he could and would do, and his picking up the doubletree and raising it was nothing but the promptings of that universal feeling of self-defense implanted in all animal nature." The facts were different from those of the case now under consideration, one phase of which, though the evidence was conflicting, was as follows: The accused and deceased were standing on the edge of the sidewalk, quarreling. Deceased struck the accused with his fist, and both backed off into the street. While backing, the accused drew from his pocket his knife and opened it with one hand, and cut the deceased, inflicting the mortal wound, and immediately fled. From this evidence there might be found the mutual intention to fight. Such intention upon the part of the deceased would be manifested by quarreling and striking the accused with his fist, and a like intention upon the part of the accused would be manifested by quarreling and deliberately drawing his knife and dealing the deadly stab upon provocation consisting of the blow. The question under the conflicting evidence was for the jury, but the evidence was sufficient to authorize its submission.

2. The evidence was sufficient to support the verdict, and there was no error in refusing a new trial.

*Judgment affirmed. All the Justices concur.*