## HOLLAND *v.* THE STATE.

1. The evidence in this case was insufficient to show mutual combat between the defendant and the deceased at the time of the homicide, and the omission to charge without request upon the subject of mutual combat as relating to the offense of voluntary manslaughter is without merit.
2. One ground of the motion for new trial complains of the charge: "No mere menace, or mere threat, or mere contemptuous gesture, without more, will justify the killing of a human being." The criticism upon the charge is that it was an incorrect statement of the law of justifiable homicide as based on reasonable fears. There was no criticism on the ground that it was an incorrect statement of the law relating to voluntary manslaughter. *Held,* that the excerpt from the charge complained of was a part of the court's instruction upon the law of voluntary manslaughter. It was inapt to employ the word "justify," but in the light of the subsequent instructions on the law of justifiable homicide, the inaccuracy in the charge does not furnish ground for a reversal for any reason assigned.
3. The evidence was sufficient to support the verdict, and there was no error in refusing a new trial.

No. 6328. APRIL 11, 1928.

Murder. Before Judge Graham. Bleckley superior court. October 5, 1927.

*H. E. Coates, L. A. Whipple,* and *W. A. McClellan,* for plaintiff in error.

*George M. Napier, attorney-general, M. H. Boyer, solicitor-general, T. R. Gress assistant attorney-general,* and *W. A. Woolen,* contra.

ATKINSON, J. 1. Complaint is made of failure to charge, without written request, the law of voluntary manslaughter as related

to mutual combat between the defendant and the deceased. One phase of the evidence tended to show the following state of facts. The defendant was proprietor of a farm located about five miles east of the town of Cochran, upon which he resided. The deceased lived in that town west of the business section, on a street that was a projection of the road from defendant's home. The homicide occurred on the street at a point where an alley intersected the street. The alley separated Purser's beef market from the rear of the store of the McRae Hardware Company. This was on the west side of the business section of the town, but not as far west as the home of the deceased. The deceased was not an officer, but he aided officers in detection of illicit distilleries. He was called a "branch walker." Several months before the the homicide the defendant ordered the deceased to cease coming upon his farm, and told him that if he did so again one of them would "tote a whipping." The day before the homicide officers invaded the farm and discovered certain beer in a wooded section belonging to tenants of the deceased. The deceased went also on the farm, and, seeing a neighbor of the defendant, informed him that he had gone on the farm and that he expected he would have to kill the defendant. He had his shotgun at the time. This threat was communicated to the defendant in the afternoon of the same day. On the day following such threat the defendant went to town and stopped at the above-mentioned beef market, where he was accustomed to stop, and for a considerable time engaged in friendly conversation with several persons gathered at that place. While thus engaged the deceased and a companion came walking down the street in the direction of deceased's home. As they approached the beef market the defendant started towards town and met them at the intersection of the street and the alley. What then occurred was thus described by some of the witnesses: The deceased said to defendant "that he had been down on his place," to which the defendant replied, "I told you if you ever went down there again one of us would tote a whipping." The deceased then said, "I reckon not," and threw his hand back and turned sidewise to defendant, and the latter shot. Defendant shot the deceased "four times just about as fast as he could shoot a pistol, . . after the fourth shot he [deceased] staggered around and fell . . by the side door of the market." The deceased "was eight or ten

feet from" defendant "at the time the fourth shot was fired, and they were both standing on the sidewalk. King [the deceased] was not doing anything."

On cross-examination the witness testified further: "I do not know whether King [deceased] tried to hit Holland [defendant] or not; he hit at him or something, I think, . . just threw his hand that way [indicating] and threw his other hand to his hip-pocket." Immediately after the shooting the defendant resisted arrest until he was overpowered by the officers. The deceased did not display any weapon nor did he have one. There was other evidence relied on to show mutual combat, but the foregoing is sufficient to illustrate the case. The defendant's statement before the jury on that subject was somewhat stronger than the evidence; but as there was no request to charge, the statement can not be taken into consideration. Upon consideration it must be held that the evidence does not show mutual combat. The deceased was unarmed, and not in striking distance with his bare hands. The deceased's movement of one hand as if to strike, and the other towards his hip-pocket was not an assault, and without any advance upon the defendant did not manifest an intention to fight. At most they were mere gestures, and, if material to any defense of the accused, they related to justification under the doctrine of reasonable fears as applied in *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177), *Clay* v. *State,* 124 *Ga.* 795 (53 S. E. 179), *Vernon* v. *State,* 146 *Ga.* 709 (92 S. E. 76), and similar cases, but not to mitigation, such as would reduce the offense to voluntary manslaughter founded on mutual combat under principles applied in the cases of *Tate* v. *State,* 46 *Ga.* 148; *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77); *Findley* v. *State,* 125 *Ga.* 579 (54 S. E. 106); *Higgs* v. *State,* 148 *Ga.* 136 (95 S. E. 994); *Bailey* v. *State,* 148 *Ga.* 401 (96 S. E. 862); *Butt* v. *State,* 150 *Ga.* 302 (103 S. E. 466); *Buchanan* v. *State,* 153 *Ga.* 866 (113 S. E. 87); *Ison* v. *State,* 154 *Ga.* 408 (114 S. E. 351). The facts of the present case differ from those involved in the cases last cited, and, under the principles applied in those cases, do not show a case of voluntary manslaughter as related to mutual combat. In the absence of an appropriate request the judge did not err in omitting to charge upon that subject.

2. While instructing the jury on the subject of voluntary man-

slaughter the judge charged: "No mere menance, or mere threat, or mere contemptuous gesture, without more, will justify the killing of a human being." The employment of the word "justify" was not an accurate application of the language of Penal Code § 65, which relates to voluntary manslaughter. *Clay* v. *State,* supra; *Cumming* v. *State,* supra; *Deal* v. *State,* 145 *Ga.* 33 (88 S. E. 573). However, in a subsequent portion of the charge, while instructing the jury upon the doctrine of reasonable fears as relating to the law of justifiable homicide, the court charged: "While provocation by mere words, threats, menaces, or contemptuous gestures shall not be sufficient to free the person killing from the crime and guilt of murder, yet threats or menaces may, under some circumstances, be sufficient to excite the fears of a reasonable man and justify a homicide. The meaning of the law is that a person can not legally kill another solely for words or mere verbal threats, or solely because of passion excited by mere menaces or contemptuous gestures. Mere words and verbal threats, without any apparent effort to put such threats into execution, are not sufficient to justify the killing of a human being; yet words and menaces may or may not be sufficient to arouse the fears of a reasonable man that his life is in danger or that a felony is about to be perpetrated upon him. In all such cases the motive with which the slayer acted is for determination by the jury. In order to justify a homicide, however, there should be something more than mere verbal threats. There must be an appearance of imminent danger, the means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently." In the light of this latter instruction the portion of the charge first above quoted was not likely to have confused the jury, and will not afford ground for a reversal.

3. The ruling announced in the third headnote does not require elaboration. *Judgment affirmed. All the Justices concur.*