SHEFFIELD *v*. THE STATE.

2

No. 12654. April 11, 1939.

Joe Schreiber and P. Z. Geer, for plaintiff in error.

M. J. Yeomans, attorney-general, John S. Gibson, solicitor-general, E. J. Clower, and H. E. Smith, contra.

ATKINSON, Presiding Justice. Clarence Sheffield was indicted for the murder of Bennie Ralls, committed by shooting with a shotgun. A verdict of guilt was returned, and the defendant was sentenced to be electrocuted. His motion for a new trial, on the general grounds and on special grounds added by amendment, was overruled, and he excepted. The following statement shows in substance so much of the evidence as is necessary to a consideration of the grounds of the motion for new trial. The shooting occurred on Saturday night, October 22, 1938. The indictment was returned the following Monday, and the defendant was put on trial two days

later. The tragedy took place in the front room of a two-room cabin located in Ware County about two miles out from Manor. The cabin was occupied jointly by Sheffield and Ralls. They had separate beds. On the night in question they were at Waycross, where they came in contact with Roscoe Hall. A plan was made by Hall to carry a party of men and women in his automobile from Waycross out to the Sheffield and Ralls place, where they intended "to have audiphone music." Hall informed Sheffield of the plan. Sheffield told Hall to "come back by there and he would go if his girl would let him." Hall told Ralls what Sheffield had said, but they agreed at Ralls' suggestion that it would be too big a load, and that Hall would come back after Sheffield. The party consisting of Hall, Ralls, Frank Green, and three women left in the car, without going by for Sheffield. About twenty minutes after their arrival and entry of the house Sheffield arrived in another automobile, and called to Hall to open the door. When the door was opened he walked in and said to Hall, "Why did you leave me in town?" He then asked for the switch-key to Hall's automobile, in order that he might drive it to Glenmore. Hall refused the request, giving as his reason that he had to carry the women back to town. Sheffield then walked to the dresser and got some shells, and from the wall behind his bed on which Frank Green was sitting he got his gun, loaded it, and commenced cursing Green and threatening him with the gun while Green was arguing with him. Hall persuaded him to stop and to put down his gun. In a few minutes Sheffield got the gun again, and Hall remonstrated with him, but he seemed to get "madder and madder." He had the gun drawn on Green, who had quit arguing with him. At that time Ralls came in and said: "Sheffield, if you don't want the boys sitting on the bed, why don't you say so instead of raising all that sand?" Whereupon Sheffield drew the gun on Ralls, and calling an infamous name said "You have been messing with me enough," and then started backing out of the door, and shot Ralls through the body. Green exclaimed that he had shot Ralls, and went to help him up, and was himself shot in like manner by Sheffield.

The foregoing substantially covers description of the tragedy as shown by the testimony of Hall. Nettie Mae MacDonald, one of the women, testified that she and Frank Green were sitting on defendant's bed, "and Bennie [Ralls] came in, and he said, 'Shef-

field, I wouldn't act like that. If you don't want Frank to sit on your bed, just tell him in a nice way,' and he backed out of the door, . . and says, 'Who wants to take it up?" and Bennie says, 'I will take it up,' and when Bennie said that he shot Bennie." Other testimony of Hall was substantially as follows: After the shooting Sheffield put the whole crowd to flight in fear and panic by repeated threats to kill and by demonstrations. In the course of this he asked Hall for the switch-key to his automobile, in order to go off in the car. On being informed that Ralls had it he caused Hall to search the pocket of Ralls for the key. Hall did so, but in his fright could not get it. Sheffield ran his hand into the pocket and gave a jerk, and the key and about forty or fifty cents in change and his pocket-knife fell out on the floor. "It was Bennie's knife. It was shut. . . It did not fall out of his hand. . . I was standing right over him, and he was lying down with his head in that direction when the knife fell out. . . I know it wasn't lying on the floor until he run his hand in his pocket and pulled it out. . . He [Ralls] came in the room throwing his hands that way, talking like you generally will talk when you talk to anybody and want them to mind you. He came in the room doing his hands like that and telling him, 'I wouldn't be raising all that sand with the boy about sitting on the bed.'" John Henderson, a deputy sheriff, testified that he arrested Sheffield about noon next after the shooting, about a mile from the place, who after being put in jail said that he did not see anything in the hands of the men when he shot them, that "he shot them because they had been mistreating him and had it in for him." In his statement before the jury Sheffield admitted being in Waycross and conferring with Hall about returning with him, and his returning home with another man, King Miller. He stated that after reaching home he walked up on the porch, knocked, and called to Hall to open the door. He did not notice anybody on his bed, and got some matches to carry out to King Miller. On his return he noticed Frank Green and one of the women lying on his bed. He objected and remonstrated with Green, endeavoring to get him to leave the bed. Green refused and used much profane language. At this point Ralls knocked for admittance at the back door, and was let in by Sheffield, and Ralls said to Sheffield with an oath, "What are you going to do?" Then followed this colloquy: "I

says, 'Don't you see the man?' He says, 'What you going to do about it if he is in your bed?' I says, 'Bennie, it is mine,' and I was backing up like that. I says, 'What you going to do now?' And he allowed, 'I will beat hell out of you.' I says, 'Well, I know you will.' And I kept backing up; and he allowed, 'You don't believe it?' I says, 'Yes, I believe you will beat me;' and he allows, 'No, —— —— it,' he says, 'You want to take possession out here anyhow,' and he done that. I jumped and grabbed my gun and shot him; and Frank, he jumped up. I don't know whether it was brass or steel knucks, or what; and when he went to run around Bennie coming towards me I unbreeched my gun right quick and put another shell in it and shot him. . . They said the knife fell out of his pocket. He had the knife in his hand. . . Bennie Ralls had it in his hand, and the knife fell on the floor when I shot him."

■ The judge charged the jury as follows: "A reasonable doubt is the doubt of a fair-minded, impartial juror honestly seeking the truth. It is not a vague, fanciful, fleeting, or capricious doubt, but it is a doubt that arises from the evidence or the lack of evidence or from the statement of the defendant, and leaves your minds wavering, unsettled, and unsatisfied, refusing to reach a conclusion that is satisfactory to you. If there is such a doubt as that in this case as to the guilt of the defendant, it is the duty of the jury to give him the benefit of that doubt and acquit him. If there is no such doubt as that in this case as to the guilt of the defendant, it is the duty of the jury to convict him." This charge states correct principles of law. Code, § 38-110; *Dumas* v. *State,* 63 *Ga.* 600 (8); *Barnard* v. *State,* 119 *Ga.* 436 (46 S. E. 644); *Green* v. *State,* 52 *Ga. App.* 290 (2), 292 (183 S. E. 204). It was not erroneous because of use of the words "refusing to reach a conclusion that is satisfactory to you."

■ The motion for new trial complains of excerpts from the charge, relating to incriminating statements made by the defendant. The grounds of complaint were that there was no evidence of such statements, and to charge on that subject was an expression or intimation of opinion that the defendant had made incriminating statements. Whether or not sufficient to show a confession (as to which see *Owens* v. *State,* 120 *Ga.* 296, 48 S. E. 21. *Weaver* v. *State,* 135 *Ga.* 317, 69 S. E. 488; *Jones* v. *State,* 139 *Ga.* 104 (3),

76 S. E. 748; *McCloud* v. *State,* 166 *Ga.* 436, 143 S. E. 558; *Brown* v. *State,* 168 *Ga.* 282 (2), 147 S. E. 519), testimony of the deputy sheriff to the effect that the defendant admitted shooting the person alleged in the indictment to have been killed, and stated certain reasons therefor that were insufficient to justify or mitigate the offense, showed such admissions of shooting as would be incriminating statements and sufficient to authorize the charge. *Marable* v. *State,* 89 *Ga.* 425 (2) (15 S. E. 453); *Shaw* v. *State,* 102 *Ga.* 660 (2) (29 S. E. 477); *Graham* v. *State,* 125 *Ga.* 48 (53 S. E. 816); *Smarrs* v. *State,* 131 *Ga.* 21 (61 S. E. 914); *Taylor* v. *State,* 135 *Ga.* 622 (3) (70 S. E. 237); *Simmons* v. *State,* 181 *Ga.* 761, 766 (184 S. E. 291). The charge was not erroneous because, as contended, it was an unauthorized expression of opinion that there was evidence of incriminating statements by the defendant.

■ Four grounds of the motion for a new trial assign error on excerpts from the charge of the court relating to voluntary manslaughter. The grounds of complaint are that the charge was not authorized by the evidence or the prisoner's statement. In *Perry* v. *State,* 185 *Ga.* 408 (195 S. E. 175), it was held: "On application to the evidence of the law as previously expounded, it was error, on a trial for murder, to omit to give in charge to the jury the law relating to justifiable homicide and voluntary manslaughter." In the opinion it was said: "If on a trial for murder the evidence tends to show that the defendant committed the homicide 'in self-defense, or in defense of . . person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on' him (Code, § 26-1011), and 'that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary, and . . that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given' (§ 26-1014), such evidence would present the defense of justifiable homicide; and it would be the duty of the judge to give in charge to the jury the foregoing principles, even though not so requested. . . If in such case there 'be some actual assault upon the person killing, or an attempt by the person killed to commit a serious personal injury on the person killing, or other equivalent circumstances to justify

the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied,' and the killing is 'the result of that sudden, violent impulse of passion supposed to be irresistible,' and there has not 'been an interval between the assault or provocation given and the homicide, of which the jury in all cases shall be the judges, sufficient for the voice of reason and humanity to be heard,' the offense would be voluntary manslaughter. Code, § 26-1007. *Williams* v. *State,* 125 *Ga.* 302 (54 S. E. 108), and cit.; *Plymel* v. *State,* 164 *Ga.* 677 (139 S. E. 349). . . In such case an assault may be found in evidence of a mutual intention to fight. *Ray* v. *State,* 15 *Ga.* 223; *Gann* v. *State,* 30 *Ga.* 67; *Findley* v. *State,* 125 *Ga.* 579 (3) (54 S. E. 106)." See further, on this subject: *Tate* v. *State,* 46 *Ga.* 148; *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77); *Higgs* v. *State,* 148 *Ga.* 136 (95 S. E. 994); *Bailey* v. *State,* 148 *Ga.* 401 (96 S. E. 862); *Butt* v. *State,* 150 *Ga.* 302 (103 S. E. 466); *Buchanan* v. *State,* 153 *Ga.* 866 (113 S. E. 87); *Ison* v. *State,* 154 *Ga.* 408 (114 S. E. 351).

In his statement before the jury the defendant, after relating his complaints about Green and the woman being in his bed, said that Ralls, on being let in through the door by defendant, with an oath said to defendant, "What are you going to do?" Then follows this colloquy: "I says, 'Don't you see the man?' He says, 'What you going to do about it if he is in your bed?' I says, 'Bennie, it is mine,' and I was backing up like that. I says, 'What you going to do now?' And he allowed, 'I will beat hell out of you.' I says, 'Well, I know you will.' And I kept backing up; and he allowed, 'You don't believe it?' I says, 'Yes, I believe you will beat me;' and he allows, 'No, —— —— it,' he says, 'You want to take possession out here anyhow,' and he done that. I jumped and grabbed my gun and shot him; . . He had the knife in his hand, . . and the knife fell on the floor when I shot him." On the basis of the statement of the defendant before the jury, the judge was authorized to charge the law of voluntary manslaughter, and consequently the instructions on this subject were not erroneous, as contended, on the ground they were not authorized by the evidence or the prisoner's statement before the jury. The facts related in this statement differ from those shown by the evidence in *Holland* v. *State,* 166 *Ga.* 201 (142 S. E. 739), which were held to be insufficient to show mutual combat between the defendant and the de-

ceased at the time of the homicide. In the instant case the statement of the defendant would have authorized a finding by the jury that the deceased was in striking distance of the defendant, armed with a knife, intending to engage in combat with the defendant at the time he was shot. The evidence did not go this far, but the prisoner's statement alone was sufficient to authorize the charge.

■ The motion for a new trial complains of the charge: "A serious personal injury on the person killing, as used in this definition of voluntary manslaughter, means a bodily injury, and not a personal affront or wrong." The alleged grounds of complaint are that the charge is an incorrect definition of "serious personal injury on the person killing," and that the term quoted "means an attempt to commit an injury, lying between a provocation by mere words, and an attempt to commit a felony—an injury, greater than the former, less than the latter." The charge as given was correct. *Thompson* v. *State,* 24 *Ga.* 297 (6). The charge complained of differs from that involved in *Burley* v. *State,* 130 *Ga.* 343, 347 (60 S. E. 1006), as is apparent from the opinion in that case.

■ The motion for a new trial complains of the charge: "The defendant in this case, gentlemen, contends that he killed the deceased to protect himself. He contends it was necessary or appeared to him as a reasonable man to be necessary for him to kill the deceased to protect his own life and to protect himself and his property and his home from the commission of a felony on him by the deceased. He contends that the killing was justifiable, and that he is not guilty of any offense under the laws of this State." The alleged grounds of complaint are that the instruction did not state all the contentions of the defendant; and that, having undertaken to state the contentions, it was erroneous to fail to state all of them. The contentions alleged to have been omitted were (1) that the killing was under circumstances that would "reduce the homicide from murder to manslaughter;" (2) the killing was done "while engaged in mutual combat;" (3) the killing was "to prevent a misdemeanor from being committed on his person or home;" (4) the killing was "to prevent or stop a trespass on his home;" (5) the killing was "in defense of his habitation against persons who manifestly intended and endeavored, in a riotous and tumultuous manner, to enter the same for the purpose of assaulting or offering personal violence to the defendant, . . who was therein at the time

of the homicide." Immediately following the charge set forth in the foregoing excerpt the judge instructed the jury: "Justifiable homicide is the killing of a human being, by commandment of the law in the execution of public justice, by permission of the law in advancement of public justice, in self-defense, or in defense of habitation, property, or person against one who manifestly intends or endeavors, by violence or surprise, to commit a felony upon either." At the beginning of the charge the court stated: "The State contends, as set out in the indictment, that on the day named in the indictment, in this county, the defendant did unlawfully and feloniously, and with malice aforethought, kill and murder Bennie Ralls by shooting him, the said Bennie Ralls, with a shotgun. You will have the indictment out with you, gentlemen, and you may refer to it if you wish to do so for a complete statement of the State's contentions. To this indictment the defendant has entered his plea of not guilty, and by his plea of not guilty he denies all the material allegations of the indictment, and places on the State the burden of proving all the material allegations of the indictment to your satisfaction to a moral and reasonable certainty and beyond a reasonable doubt." When the part of the charge complained of is considered in connection with the charge as a whole, it sufficiently states all of the contentions of the defendant as set forth in his statement before the jury, which was all that appeared from which his contentions could be gleaned by the judge in delivering his charge to the jury. There was no merit in this ground of the motion for a new trial. This accords with the ruling in *Ragland* v. *State,* 111 *Ga.* 211, 214 (36 S. E. 682), and other similar cases.

■ Complaint is made of the charge: "He contends that it was necessary, or appeared to him as a reasonable man to be necessary, for him to kill the deceased to protect his own life or to protect himself and his property, his home, from the commission of a felony on him by the deceased." The grounds of complaint are (a) that the instruction was calculated to make the jury believe in order to acquit "the homicide must have been done to prevent the commission of a felony," whereas it would be a good ground of defense if the person killed "and another were manifestly intending and endeavoring to enter his habitation, in a riotous and tumultuous manner, for the purpose of assaulting or offering personal

violence to the defendant not amounting to a felony;" (b) that, as applied to the defense of the habitation of the defendant as "against the deceased and another who was already trespassing on the home of the defendant, who were manifestly intending and endeavoring, in a riotous and tumultuous manner, to enter the same for the purpose of assaulting or offering personal violence to some one therein," it was not necessary for the justification for one killing in defense of his habitation that the killing should be "to prevent the commission of the felony," but the killing would be justified if the purpose of the invaders was to assault or offer personal violence to him, not amounting to a felony. The uncontradicted evidence, which was not denied in the prisoner's statement, was that the defendant and Bennie Ralls lived together in the same house, and that when the defendant was in the house with others, engaged in a controversy, Bennie Ralls knocked at the door; whereupon the defendant unlatched the door for him to come in, and after he entered the two engaged in a controversy during which the shot was fired. In the circumstances the judge properly omitted to charge the last clause of Code § 26-1011, providing that it is justifiable to kill "any persons who manifestly intend and endeavor, in a riotous and tumultuous manner, to *enter the habitation of another* for the purpose of assaulting or offering personal violence to any person dwelling or being therein." There is no merit in this ground of the motion for a new trial.

■ The defendant complains of the charge: "Justifiable homicide is the killing of a human being, by commandment of the law in the execution of public justice, by permission of the law in advancement of public justice, in self-defense, or in defense of habitation, property, or person against one who manifestly intends or endeavors, by violence or surprise, to commit a felony upon either." The criticism is that "it is not necessary for the justification of one who kills another in defense of his habitation against persons who manifestly intend and endeavor, in a riotous and tumultuous manner, to enter the same for the purpose of assaulting or offering personal violence to some one dwelling or being therein, that such an assault or personal violence so offered by the invaders amount to a felony." The charge is not open to this criticism. It was in the language of the Code, § 26-1011, so far as given. So much of the Code section as relates to "enter the habitation of another," etc.,

quoted in the preceding division, was not applicable to the case, and, as already stated, the judge was not charging on that subject.

■ As indicated in divisions 6 and 7 of this opinion, the last part of Code § 26-1011 was not applicable to the case. Accordingly it was not erroneous, as complained in the motion for a new trial, for the judge, after charging the first portion of the Code section which was applicable, to omit to charge the latter part which was not applicable.·

■ Complaint is made in the motion for new trial of omission, without request, to charge: "Admissions or incriminating statements alone, uncorroborated by other evidence, will not justify a conviction." It is declared: "All admissions shall be scanned with care, and confessions of guilt shall be received with great caution. A confession alone, uncorroborated by any other evidence, shall not justify a conviction." Code, § 38-420. There is substantial difference between admissions and confessions. *Fletcher* v. *State,* 90 *Ga.* 468 (17 S. E. 100) ; *Weaver* v. *State,* 135 *Ga.* 317, 321, and cit. Admissions relate to any fact material to the issue, and are to be scanned with care and considered, with any other evidence, for what they are worth. It is not declared or required that they be corroborated by other evidence in the case, as are confessions of the crime. Accordingly it would have been misleading to charge in the above-quoted language. The case differs from *Lucas* v. *State,* 110 *Ga.* 756 (4) (36 S. E. 87), which had reference to the law of confessions; and the ruling was restricted to the facts of "the present case," which was said to be "weak and doubtful." See also *Brantley* v. *State,* 154 *Ga.* 80 (3) (113 S. E. 200), and cit.; *Gore* v. *State,* 162 *Ga.* 267 (3) (134 S. E. 36).

■ It was not cause for reversal to omit to charge: "A felony is an offense punishable by death or imprisonment in the penitentiary." *Pickens* v. *State,* 132 *Ga.* 46 (63 S. E. 783), and cit.; *Gore* v. *State*, supra. The alleged ground of complaint was, "because said principle of law was a pertinent and material one in the case, and such omission to so charge or in any manner to define to the jury the meaning of the word 'felony' was highly prejudicial to the rights of the defendant, and especially so in view of the fact that the court actually charged the jury as follows: 'He contends that it was necessary, or appeared to him as a reasonable man to be necessary, for him to kill the deceased to protect his own life

or to protect himself and his property, his home, from the commission of a felony on him by the deceased.' 'Justifiable homicide is the killing of a human being by commandment of the law in the execution of public justice, by permission of the law in advancement of public justice, in self-defense, or in defense of habitation, property, or person against one who manifestly intends or endeavors, by violence or surprise, to commit a felony upon either.' Moreover, the court's failure to explain to the jury the meaning of the word, 'felony' left the jury almost, if not entirely, in the dark as to what is necessary to constitute justifiable homicide."

■ The evidence relied on for conviction not being entirely circumstantial, it was not cause for reversal that the judge, without request, omitted to charge: "Indirect or circumstantial evidence is that which only tends to establish the issue by proofs of various facts, sustaining by their consistency the hypothesis claimed. To warrant a conviction on circumstantial evidence, the proved facts must not only be consistent with the hypothesis of guilt, but must exclude every other reasonable hypothesis save that of the guilt of the accused." *McElroy* v. *State,* 125 *Ga.* 37 (2) (53 S. E. 759); *Paramore* v. *State,* 161 *Ga.* 166 (8) (129 S. E. 772); *Crumady* v. *State,* 168 *Ga.* 457, 463 (148 S. E. 157), and cit. The alleged grounds of complaint were, "because said principle of law was a pertinent and material one in the case, and because the court nowhere in its charge defined to the jury circumstantial evidence, and nowhere in its charge instructed the jury when it was authorized to convict on circumstantial evidence; and the court's omission to charge as above set forth was especially harmful and prejudicial to the defendant in this case, because the court did actually charge the jury on admissions and incriminating statements, viz.: 'Admissions and incriminating statements are not direct but circumstantial evidence, and should be scanned with care and received with great caution,' and the court, having so charged, certainly should have charged the jury as set forth herein."

■ The judge charged generally on the law of voluntary manslaughter. It was not cause for reversal that, without request, he omitted to charge: "That if you believe from the evidence or the defendant's statement that the defendant unlawfully killed the deceased to prevent a misdemeanor upon his habitation, property, or person, or to prevent a trespass upon his property, habitation, or

person, less than a felony, then the defendant would be guilty of voluntary manslaughter." The alleged ground of complaint was "because it was a material issue in the case as to whether the homicide in this case should have been reduced from murder to manslaughter on account of the defendant killing the deceased under either of the circumstances mentioned above."

■ Complaint is made of the omission, without a request, to charge: "If upon a sudden quarrel the parties fight upon the spot, or presently agree and fetch their weapons and fight, and one of them is killed, such killing is but voluntary manslaughter, no matter who strikes the first blow." The alleged grounds of complaint are that "said principle of law was a pertinent and material one in the case, because it was a material issue in the case as to whether the homicide in question should have been reduced from murder to manslaughter, and the court nowhere in its charge instructed the jury relatively to the law of voluntary manslaughter as based upon the theory of mutual combat or mutual intent to fight, and the omission of the court to charge as above set forth deprived this defendant of the benefit of one of his defenses in the case, and deprived him of the right for the homicide in the case to be reduced from murder to manslaughter; and especially so in view of the fact that [as] the court did charge the jury on voluntary manslaughter as defined in the Code, the court's omission to charge as set forth above is error in this case, because, when the court undertook to charge the jury on the law of voluntary manslaughter the court should have fully and completely charged the jury relatively to the law of voluntary manslaughter as based upon the theory of mutual combat or mutual intent to fight." It was held in *Holland* v. *State,* 166 *Ga.* 201 (142 S. E. 739) : "The evidence in this case was insufficient to show mutual combat between the defendant and the deceased at the time of the homicide, and the omission to charge without request upon the subject of mutual combat as relating to the offense of voluntary manslaughter is without merit." While one of the witnesses for the State in the instant case gave testimony tending to show that while the defendant was cursing and threatening Green, Ralls remonstrated with him, and in response to defendant's question stated "I will take it up," there was no evidence of any act by Ralls indicating an intention to engage in a fight with the defendant. The witness testified that upon

Ralls making the statement above quoted, the defendant shot him. In these circumstances there was no evidence tending to show mutual combat. *Brannon* v. *State,* 188 *Ga.* 15 (2 S. E. 2d, 654). As indicated in the third division of this opinion, the theory of mutual combat was involved in the case, but depended solely upon the prisoner's statement. In the absence of a pertinent written request for instruction thereon, the court is not bound to give in charge the law of a theory of the case arising solely from the statement of the accused. *Hardin* v. *State,* 107 *Ga.* 718 (3) (33 S. E. 700); *Hawkins* v. *State,* 141 *Ga.* 212 (2) (80 S. E. 711); *Sheppard* v. *State,* 179 *Ga.* 615 (176 S. E. 634); Code, § 38-415, and numerous cases cited in the annotations. The omission to charge as complained of was not erroneous for any reason assigned. The case differs from *Little* v. *State,* 150 *Ga.* 728 (105 S. E. 359), *Harris* v. *State,* 152 *Ga.* 199 (108 S. E. 781), and *Ison* v. *State,* 154 *Ga.* 408 (114 S. E. 351), in which the evidence showed that the homicide was committed while the parties were engaged in mutual combat.

■ The evidence was sufficient to support the verdict, and there was no error in overruling the motion for a new trial, for any reason assigned. *Judgment affirmed. All the Justices concur.*

BELL and JENKINS, Justices, concurring specially. We concur in the judgment of affirmance, and in the opinion as written, except the statement in the ninth division that "Admissions relate to any fact material to the issue, and are to be scanned with care and considered with any other evidence for what they are worth. It is not declared or required that they be corroborated by other evidence in the case, as are confessions of the crime." The first of these sentences states a correct principle, and it is only the second to which we can not agree. The second sentence at least implies that evidence of a mere incriminating statement, without more, may be sufficient to authorize a conviction, whereas a confession will require corroboration. If, as is true, a confession requires corroboration in order to justify a conviction, a fortiori an incriminating statement, which is less than a confession, must also be corroborated, being insufficient within itself to authorize a verdict of guilty. Under the evidence and the defendant's statement, however, there was no issue as to corroboration, such incriminating statements as were proved having been indisputably corroborated by the testimony as

to the killing and the defendant's admission of this fact in his statement to the jury. Such being the case, the court did not err in failing to charge the jury that admissions or incriminating statements alone, uncorroborated by other evidence, will not justify a conviction.