## CADY *v.* THE STATE.

No. 14842. JUNE 8, 1944. REHEARING DENIED JULY 18, 1944.

*E. L. Grantham* and *R. A. Moore,* for plaintiff in error.

*T. Grady Head, attorney-general, John W. Bennett Jr., solicitor-general, D. C. Sapp,* and *Victor Davidson, assistant attorney-general,* contra.

JENKINS, Presiding Justice. 1. The first of the special grounds dealt with a challenge to the array of jurors, the attack being made on several grounds:

(a) "Where a juror is put upon a defendant being tried under an indictment for a criminal offense, and is peremptorily challenged by the defendant, the juror is not so disqualified that he could not again be put upon the defendant at a subsequent trial for the same offense under the same indictment, either because the defendant would thereby be deprived of his full 20 strikes, or because

it would deny to him his constitutional right of a fair and impartial trial and equal protection of the laws." *Esa* v. *State*, 146 *Ga.* 17 (90 S. E. 278). See also, *Coleman* v. *State*, 141 *Ga.* 731 (82 S. E. 228); *Nixon* v. *State*, 121 *Ga.* 144, 145 (5) (48 S. E. 966). Accordingly, the fact that the panel may have included the names of certain jurors, who had appeared in a panel presented in a previous trial of the defendant, and who had been peremptorily challenged by the defendant, does not constitute a good ground of challenge to the array.

(b) "Under our law as it stands, females are not subject to jury duty, it being provided in the act of the General Assembly, approved August 13, 1921 (Acts 1921, p. 106), that 'females shall not be liable to discharge any military, jury, police, patrol, or road duty.' And this law is not obnoxious to the nineteenth amendment to the constitution of the United States, which reads as follows: 'The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of sex.' This amendment to the constitution does not contemplate that the State shall be required to place the names of females in the jury-box." *Powers* v. *State*, 172 *Ga.* 1 (4) (157 S. E. 195). See also *Rawlins* v. *State*, 124 *Ga.* 31 (52 S. E. 1), affirmed in 201 U. S. 638 (26 Sup. Ct. 560, 50 L. ed. 899, 5 Ann. Cas. 783); *Griffin* v. *State*, 183 *Ga.* 775, 777 (190 S. E. 2). Accordingly, the challenge to the array as set forth in subsection (b) is without merit.

(c) The challenge to the array of a second panel of jurors after the first panel of forty-eight had been exhausted is not good on the ground that the striking of jurors can not proceed until a second full panel of forty-eight jurors has been completed. In *McGuffie* v. *State*, 17 *Ga.* 497 (4), it was held that: "It is within the discretion of the court to determine the number of which the panel of tales jurors shall consist in capital cases, and the number of panels which may be at the same time summoned." See also *Cason* v. *State*, 134 *Ga.* 786 (68 S. E. 554). Accordingly, this ground of objection is without merit.

(d) The defendant complains that the panel of jurors was an illegal panel, because there were no properly selected jurors in the jury-box from which a panel could have been selected, since the tax commissioner did not supply to the jury commissioners

the names on the list going into the jury-box; and for the further reason that the law requires the jury commissioners to be supplied by the tax receiver with the names; and for the repeated reason that there were no women jurors on the list. Section 59-106 of the Code provides that, "Biennially, or, if the judge of the superior court shall direct, triennially on the first Monday in August, or within 30 days thereafter, the board of jury commissioners shall revise the jury lists. The jury commissioners shall select from the books of the tax receiver upright and intelligent men to serve as jurors." We agree with the State's counsel that "what is meant by the books of the tax receiver is the tax digests, which under the law consist of three copies, one of which is placed in the hands of the State Revenue Commissioner, another in the possession of the tax collector and the other in the hands of the ordinary or board of county commissioners, all of which must be done before August 1 of each year. Therefore in August neither of these books is in the custody of the tax receiver, and the jury commissioners are authorized to use either of these three digests." Hence, although the tax commissioner swore that he did not furnish the list of names, he has no authority to do so. There is no evidence that the names of the jurors placed in the jury-box were not taken by the jury commissioners from one of the digests prepared by the tax commissioner in his capacity as tax receiver. The ground is without merit. See, in this connection, *Davis* v. *Arthur,* 139 *Ga.* 74 (5) (76 S. E. 676).

(e) It is not error for the judge in his discretion to refuse to permit the defendant to propound questions other than those embraced in the statute in order to further test the qualifications of jurors. *Dumas* v. *State,* 63 *Ga.* 600; *Simmons* v. *State,* 73 *Ga.* 609 (54 Am. R. 885) ; *Lindsay* v. *State,* 138 *Ga.* 818 (76 S. E. 369)

2. The Code, § 27-2201, provides as follows: "After the testimony shall have been closed on both sides, the State's counsel shall open and conclude the argument to the jury, except that, if the defendant shall introduce no testimony, his counsel shall open and conclude after the testimony on the part of the State is closed." Where the defendant has introduced evidence in his own behalf, the fact that he may admit the homicide and seek to prove justification does not entitle him to open and conclude the argument. *Mize* v. *State,* 135 *Ga.* 291 (2) (69 S. E. 173).

3. Ground 7 of the motion for new trial complains that the court refused to grant the defendant's motions for a mistrial on account of alleged inflammatory remarks of the solicitor-general in the presence of the jury. In order to deal with this point, it is necessary to embrace from the record that ground of the motion which is as follows: "During the progress of the trial, and in the presence of the jury, the following colloquy took place among State's counsel, attorneys for the defendant, and the court, relating to the reading into the record before the jury of a transcript of the testimony of a witness, Sylvester Hardwick, given on a former trial, the witness being alleged to be inaccessible at the time:

"Mr. Parker: Now, may it please Your Honor, in the light of the showing that has already been made by the sheriff, it appears that Sylvester Hardwick, who has testified before in a previous trial of this case, is inaccessible; he lives in another State, and of course we can not force him by an ordinary subpœna to come into this jurisdiction. It appears also from the sheriff's testimony that he has made all reasonable and diligent efforts, including the trip that he went to Jacksonville together with counsel for defendant and myself, in an effort to find the witness and persuade him to come to court if possible. I want to state in my place that I have done all that I know to do. I went personally and got from the clerk here two subpœnas, and the sheriff, of course, got them and mailed them to me, and I mailed one of them to his last known address, 636½ Ashley Street, as I recall it, and it didn't come back. It was mailed by me personally, after being countersigned by the solicitor, and after statement that his expenses would be paid.

"The court: And the proper postage attached?

"Mr. Parker: Yes, and another letter was mailed with another subpœna, addressed to general delivery Jacksonville, Florida, and neither of those letters have been returned, so far as I know, to my office; and that was some two weeks or more ago—ten days ago, at least—and I know of nothing else that the State could have done to procure the attendance of this witness. We have shown by the reporter that this is the transcript, and we now tender the evidence of Sylvester Hardwick given on the previous trial of this case.

"The court: Any objection?

"Mr. Moore: Yes, I will have to state in my place—it is already in the record, but I restate it—in objection to the allowance of the evidence, which is this: We stated a moment ago that we have no counter-showing to the showing that they have made. This is, in effect, counter to the showing, for we—for the defendant— were diligent, too. I concede that maybe our diligence inures to the benefit of the State's diligence if it had gone far enough. The defendant contended at all times, at the last trial and at all times since, that the negro was a perjurer. I participated in the negotiations to get him back, and importuned the solicitor-general to agree that he come back and testify; that he not be subjected to punishment; that the defendant nor his counsel, nor any person connected with the defendant, would see or talk to him; if the sheriff or solicitor-general would give him safe conduct, it would be all right with us, notwithstanding we knew he was a perjurer. Mr. Parker declined to agree not to prosecute him if he told a different story, or if he told a story that he thought was untrue when he came back, and that same thing was true at the outset in this case. Your Honor will remember, and I want it a part of the record, that I solicited you and Mr. Parker together in the room in the rear of the judge's stand to assist us in getting the witness back, and it was at Mr. Parker's suggestion, as I recall, that we repaired to the sheriff's office. I think maybe Your Honor left us there, and we had overlooked Mr. Sapp, but he came in and we talked there and agreed, at Mr. Parker's suggestion, that we try to get him to come back, and go down and tell him that both sides wanted him to tell the truth and come back and testify; but, even so, Mr. Parker said he would not agree to immunize him from prosecution if, in his opinion, the negro was guilty of perjury. When we were unable to get the negro to come back by negotiation, we were willing to have him come back here as mad as blazes, just so he would testify. We got warrants and got the negro in jail, and Mr. Parker declined to participate in the extradition which the negro was demanding. Now, that is the diligence; and when the matter was mentioned to Mr. Parker (I state in my place too) about indicting the negro here, he said he would not present the bill. They had the negro in jail, and he could have been extradited by the State, and had him here, and we wouldn't care how mad he was, just so we had him here.

"Mr. Parker: May I say one word further? May it please Your Honor, I will say to the court and to counsel now, that as long as I am solicitor-general I am not going to let a defendant tell me who to prosecute for perjury and who not to prosecute. I will go a step farther and say that if this negro was testifying for Mr. Cady, and I thought he was a perjurer, as I don't think in this case, I would not indict him before a grand jury of Coffee County while Mr. Cady's case was pending and undisposed of in the court. Now, that is my position flatfootedly with respect to the perjury. Counsel did approach me and ask if I would join in a requisition proceeding to bring him back on a charge of perjury. I told them, no; before I could join in any such proceeding I would have to file a petition addressed to the Governor, and state that he was charged with perjury, and in my opinion was guilty of perjury; and I can't make any such statement to the Governor of this State or to the Governor of Florida. I told them further that if the tables were reversed, and if the darky were swearing for Mr. Cady, I would not join in any proceeding to indict him for perjury pending the disposition of the case. I don't think it would be fair to a defendant while his case is still on the docket undisposed of to go before a grand jury and indict a material witness for a defendant for the offense of perjury, and thus cast a cloud over his testimony; and I don't think it is fair, on the other hand, for the State to do it where he is a material witness for the State.

"I will state with respect to the matter of immunity that when counsel first approached me with respect to going to Jacksonville and promising the darky immunity, that is, that he would not be prosecuted if he came back to this court, no matter what he testified, I told counsel that I would not bargain with a witness on any such basis; that if the witness came back and told substantially what he had heretofore told, that, of course, there would be no effort to indict him; but that I wasn't going to promise a witness immunity from the processes of the law, and prosecution at the hands of the law, regardless of what he might swear in the trial of the case—a murder charge of that type in this county; and I am going to stick to that proposition. I wouldn't do it in this case, and I wouldn't do it in any other case. I don't bargain with witnesses in advance of trials and promise immunity as to what they may testify respecting the truth of a transaction. I might say further

that I don't know whether the darky would have come back or not. He didn't come at the March term. We tried to get him at the March term, and were unable to do it. He was scared to death while he was here. He was kept in jail four or five months as a material witness before the first trial, under the orders of the coroner, and for his own protection; and I don't blame him, personally, if he doesn't come back. I will say that in behalf of the witness; but, certainly, after these gentlemen had taken a perjury warrant charging him with perjury, and undertake to prosecute him for perjury, he would be a plain fool had he come back voluntarily to the very court in which he was going to have to face a prosecution for perjury. I made that statement to these gentlemen. I told them that if we had any hope of getting him back, we certainly wouldn't get him if they had him arrested on a perjury warrant; that, if he had any sense at all, he certainly wouldn't come back freely and voluntarily and willingly to court to be subjected immediately to a prosecution for perjury. Now, I hope I have made my position clear to the court with respect to the matter. I think it is a reasonable position. It is my position nevertheless, and I think the court should have it in view of what counsel has stated in his place.

"Mr. Moore: If the court please, will you retire the jury? I want to make a motion at this time.

"The court: All right, let the jury retire." (The jury retired from the court room.)

"Mr. Moore: Now, if the court pleases, in view of the rather extensive and inflamed remarks of the solicitor-general, the repetition of which I do not deem necessary here, in view of the fact that they have just been made in the presence of the court and jury, I ask the court at this time for a mistrial in this case, because the statements of the solicitor could have no other effect on the minds of the jury in this case, in my opinion and in my belief, than to have prejudiced their minds to the definite detriment of the defendant, and to imperil his chances of securing an impartial trial.

"The court: Don't you think it was in response to the statement you made?

"Mr. Moore: It may have been aimed at a response, if the court please, but it was an oratorical outburst.

"Mr. Parker: I want to make one correction, may it please

Your Honor. I didn't tell Judge Grantham that if the tables were reversed, but I did make that statement to Mr. Moore. He is the man I had in mind when I said I told counsel for the defendant. Here is what happened with Judge Grantham: On Monday of last week, I believe Mr. Moore was out, and Judge Grantham asked me if I would lend my name for use on an extradition proceeding, and I told him, no. Later in the day—I don't know whether it was Monday or Tuesday—he came to the grand-jury room where I was serving the grand jury, and said, 'I have a request to make of you.' I said, 'All right, what is it?' That was in the solicitor's room. He says, 'I want to bring Mrs. Cady over here, and I want you to draw an indictment for perjury against this negro.' He may have called his name. If he didn't, I understood who he meant. And he said, 'I want it presented to this grand jury.' I said, 'No, I won't do that.' He said, 'Well, you don't blame me for asking it?' I said, 'No,' and got up and walked out. Isn't that what happened?

"Thereupon, counsel for the defendant then and there moved the court for a mistrial in the case because of the statements of the solicitor above quoted, and for the reason that such remarks could have no other effect on the minds of the jury in the case than to prejudice their minds to the definite detriment of the defendant, and to imperil his chances of securing an impartial trial, which motion the court then and there overruled, and denied a mistrial, which judgment refusing a mistrial was adverse to the defendant, was against the principles of justice, and was harmful error."

We can see nothing in the remarks of the solicitor-general which is in any way improper or inflammatory in character, and nothing which would prejudice the rights of the defendant. The motion does not, in fact, indicate how or why such could be true. Therefore the ground is without merit.

4. The Code, § 38-1604, is as follows: "Husband and wife shall not be competent or compellable to give evidence in any criminal proceeding for or against each other, except that either shall be competent, but not compellable, to testify against the other upon the trial for any criminal offense committed, or attempted to have been committed, upon the person of either by the other. The wife shall be a competent witness to testify for or against her husband in cases of abandonment of his child, as provided in section

74-9902." The constitutionality of this provision of the Code was adjudicated in *Melton* v. *State,* 180 *Ga.* 104 (178 S. E. 447), where it was said: "Under the statute law of this State, a wife is incompetent to testify either for or against her husband on his trial for the offense of murder. The statute embodying this rule is not invalid as being unreasonable or contrary to public policy, or as violating either the due-process or the equal-protection clause of the State and Federal constitution." Accordingly, the 9th ground of the motion for new trial is without merit.

5. The movant complains that the court erred in not granting a mistrial on account of the method of examination by State's counsel of certain witnesses for the defendant, whereby, as alleged, the "character" of the defendant (whether good or bad not stated) was injected into the case. About sixteen pages of typewritten questions and answers are embodied in the motion for the purpose of showing that such was the effect of the prolonged interrogation. At the conclusion of this line of interrogation, the motion for mistrial was made. While we do not think that the exception is well taken on its merits, we rest our decision on the ground that the defendant should not be permitted to tacitly acquiesce by his silence throughout the course of this prolonged line of questioning, and then make the contention that such an extended line of interrogation had the general effect of putting the defendant's character in issue and was therefore harmful to the extent that a mistrial should be declared.

6. The 11th ground of the motion is as follows: "Because, during the progress of the trial, John Ricketson, a witness for the State, was permitted to testify as follows: 'After we got through with the inquest me and the sheriff went over there [to the jail]. I didn't have any conversation with him [Eurus Cady, the defendant]. The sheriff and the patrolman was talking with him. There was a patrolman with us. Mrs. Cady, his wife, was also present. Some of them mentioned the wrench—I don't remember now who it was, but his wife spoke up and says, 'I can tell you exactly how come the wrench there—I carried it there myself.'" This evidence was admitted over objection, not on the theory that what the wife said would have any probative value, but because her statement was made in the presence of the defendant who made no denial or response thereto, although contrary to what he now as-

serts and contends. This proposition of law seems to have been fully dealt with and decided by this court adversely to the movant, in *Odum* v. *State,* 183 *Ga.* 854 (190 S. E. 25), where a number of previous cases are cited, and therefore the ground is without merit.

7. The defendant's statement on a former trial is admissible against him. *Dumas* v. *State,* supra. Accordingly, the judge did not err in admitting in evidence a transcript of the defendant's statement made at a former trial.

8. Complaint is made that the court refused to charge the following request: "If you find that the defendant, Eurus Cady, killed the deceased, Tom Burden, as a result of a fight in which the defendant, Eurus Cady, and the deceased, Tom Burden, both intended to take part, and that in the passion engendered in the defendant, Eurus Cady, by such a fight, had not had a sufficient time to cool or that no sufficient cooling time had intervened, then such killing would be involuntary manslaughter." The defense of involuntary manslaughter does not appear to have been in anywise involved in this case. If what was really meant was "voluntary manslaughter," that law was fully and correctly charged.

9. A charge on impeachment is not required, in the absence of a timely written request. See the Code, § 38-1806, and citations in Ga. Code Ann., § 38-1806, p. 675. Accordingly, the ground of the motion which complains that the court failed, on its own motion, to charge as to the impeachment of witnesses, particularly the Code, § 38-1803, dealing with impeachment on account of "contradictory statements previously made," is without merit.

10. The movant complains "because the court erred in failing as a part of his instructions to the jury to state the contentions of the defendant, after having stated the contentions of the State; movant averring that no reference whatever is made to the contentions of the defendant, save and except in the paragraph: 'The contentions of the State as set out and alleged in the indictment, and the defendant's plea of not guilty, make the issue which you are called upon to try and determine in this case.'" We think this ground without merit. Near the beginning of the instructions, the court charged: "If you find that the deceased was the aggressor without sufficient provocation, and you also find that there was a great discrepancy or inequality in the strength of the parties on

account of their physical condition, and the defendant was unable to defend himself without the use of a weapon, and he used the weapon in self-defense, and did not act beyond the apparent danger, if any, then it would be your duty to acquit the defendant. In other words, if at the time the shot was fired the person who did the shooting had well-founded reasons, as a reasonable, courageous man, to believe himself in imminent peril of a felony being inflicted upon him, without fault on his part, produced the exigency to shoot, then such killing would not be murder."

11. The movant excepts to the refusal of the court to charge the following request: "If you disbelieve the evidence of Sylvester Hardwick, the negro, whose testimony on a former trial was read in your hearing, then I charge you that the testimony in this case would be circumstantial evidence, and in that event you will acquit the defendant, Eurus Cady, and return a verdict of not guilty, unless you go further and find to a moral and legal certainty and beyond a reasonable doubt that the circumstances as proven were such as to exclude every reasonable hypothesis save the hypothesis of guilt. By hypothesis is meant a real condition taken as a basis for inference or a ground from which to draw conclusions." While the defendant, who had attacked the evidence of this witness, had the privilege to request, if he chose, and thus obtain a charge on the law of impeachment, this he failed to do; and it would seem to overemphasize his attack to expect the court to charge the status of the case on a mere assumption that the jury would disbelieve the testimony of this witness; and besides, even were the jury to wholly reject the evidence of this witness, the case would not be one of circumstantial evidence only, since the defendant admitted the fact of killing. Moreover, it is the law that where a homicide is shown to have been committed by the defendant, or as in this case is admitted by him, a legal presumption of malice arises, and it devolves upon the defendant to exculpate himself from the crime and guilt of murder by showing justification, mitigation, or excuse, unless it be that his statement admitting the killing or the State's evidence showing it, or the surrounding facts and circumstances connected with such evidence or admission, should themselves tend to justify or mitigate the homicide. *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934) ; *Turner* v. *State,* 139 *Ga.* 593 (3) (77 S. E. 828) ; *O'Pry* v. *State,* 142 *Ga.* 600 (83 S. E. 228) ; *Mattox* v. *State,* 181 *Ga.* 361 (4) (182 S. E. 11) ;

*Thompson* v. *State,* 191 *Ga.* 222 (7), 223 (11 S. E. 2d, 795). The charge requested, as an abstract principle of law, does not seem to be in harmony with the rule just stated, since an instruction such as requested would necessarily impose upon the State the unwarranted burden of showing to a moral and legal certainty that an admitted or proven homicide was without palliation, excuse, or justification, even though the admission or testimony proving the killing failed to justify or mitigate it, whereas in that event no such duty would devolve upon the State. In any event, and irrespective as to what had or had not been shown with respect to justification or palliation, since these are matters solely for the jury, and concerning which the court is forbidden to express an opinion, the requested charge would need to set forth an abstractly correct principle of law. The ground is without merit.

12. Exception is taken to the following excerpt from the charge: "Justifiable homicide is the killing of a human being in self-defense, or in defense of one's person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony upon such person." The ground of complaint is that the legal definition of justifiable homicide is embodied in the Code, § 26-1011, and therefore the portion charged is a misstatement as being incomplete. The full section is as follows: "There being no rational distinction between excusable and justifiable homicide, it shall no longer exist. Justifiable homicide is the killing of a human being by commandment of the law in execution of public justice; by permission of the law in advancement of public justice; in self-defense, or in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either; or against any persons who manifestly intend and endeavor, in a riotous and tumultuous manner, to enter the habitation of another for the purpose of assaulting or offering personal violence to any person, dwelling, or being therein." The defendant further contends that the abbreviated charge omitting portions of this section deprived him of one of his defenses, to wit, the protection of his wife, upon whom, it is contended, a felony was about to be committed. It is not error for the judge to fail to charge the law of justifiable homicide in the abstract terms of the Penal Code, provided he correctly applies those provisions to the facts and contentions as made by the defendant in the trial of the case. *Wilder* v. *State,* 148 *Ga.* 270 (3) (96 S. E. 325). This

the judge did in the case before us, by the excerpt complained of, in so far as self-defense was involved and concerning which he was addressing himself when the excerpt was charged. In another portion of the charge the other ground of defense referred to in this motion was fully and fairly stated.

13. Ground 18 of the motion for new trial complains that the court failed to give in charge "the rule of decision," that is, failed to instruct the jury that they were the judges of both the law and facts, the facts as adduced on the trial and the law as given them in charge by the court. This complaint has been several times determined by this court adversely to the movant. In *Webb* v. *State*, 149 *Ga.* 211 (2) (99 S. E. 630), it was held: "The court did not err in failing to instruct the jury that they were judges of the law and the facts," citing numerous cases.

14. The movant excepts to the failure to charge the law of mutual combat, asserting that, under the facts of this case, it was error to fail so to do, with or without a request, even though the court had charged the general law of voluntary manslaughter. The cases of *Shafer* v. *State*, 191 *Ga.* 722 (13 S. E. 2d, 798); *Bailey* v. *State*, 148 *Ga.* 401 (96 S. E. 862); *Ison* v. *State*, 154 *Ga.* 408 (114 S. E. 351), are cited by the movant. It will be observed that no exception is taken to any erroneous or misleading charge with reference to this subject-matter, but only to an absence of any instructions thereon. It appears from the record that the court did in fact charge the jury on the subject of mutual combat in language as follows: "If the State has proven to you, to a moral and legal certainty and beyond a reasonable doubt, that the defendant, Eurus Cady, killed the deceased, Tom Burden, either in the heat of passion, or while the defendant, Eurus Cady, and the deceased, Tom Burden, were engaged in mutual combat, in acting under the fears of a reasonable man that a felonious assault was being or about to be made on him or on his wife, then your verdict would be guilty of voluntary manslaughter." Whether or not this charge might be subject to criticism, is a question not raised by the exception. For a recent discussion of the propriety or necessity of a charge on mutual combat, see *Fulwood* v. *State*, 68 *Ga. App.* 183, 185 (22 S. E. 2d, 526).

15. Complaint is made because the court, over objection, permitted State's counsel to read into evidence a transcript of the evi-

dence of the witness, Sylvester Hardwick, who had testified at a previous trial of the case, and who was shown to be a resident of Jacksonville, Florida, but not present in court. The transcript was identified by the reporter as substantially a correct transcript of all the evidence of the witness in that former trial. Reference is made to division 3 of this opinion for a better understanding of this ground. It appears that the material witness had refused to return to the State and again testify in the case. In *Smith* v. *State*, 147 *Ga.* 689 (95 S. E. 281, 15 A. L. R. 490), this court held: "The testimony of a witness who was examined on a former trial of a criminal charge, where opportunity for cross-examination was afforded, is admissible in evidence on a subsequent trial of the same defendant upon the same charge, upon proof that the witness has removed from the State and has refused to return and testify in the case." The mere averment set forth in this ground that his previous confinement as a material witness amounted to coercion to such an extent as to render the truth of his testimony improbable, does not present a meritorious ground of complaint. Nor does the fact that this ground of the motion shows that his testimony was under attack as being subject to a previous contradictory statement, afford a good ground of complaint.

16. No harm could have been perpetrated on the defendant by the following charge: "To this indictment the defendant has entered his plea of not guilty, and by his plea of not guilty he denies all the material allegations of the indictment, and places on the State the burden of proving all the material allegations of the indictment to your satisfaction to a moral and reasonable certainty and beyond any reasonable doubt." Even though the defendant had admitted the killing, the failure of the court to except this allegation from those which the State was *otherwise* required to prove, was not a matter of which he could rightly complain. The same can be said of the exception to the charge that: "The defendant enters upon the trial of the case with the presumption of innocence in his favor, and that presumption remains with him until and unless the State shall overcome and remove it by the introduction of testimony in your presence and hearing sufficient to convince your minds beyond a reasonable doubt of the guilt of the defendant."

17. Grounds 23 and 24 of the motion attack the verdict for the reason that one of the jurors was related within the sixth degree,

as computed by the civil law, to one N. E. Holton who, although not entered as such, it is alleged was in effect a voluntary prosecutor in the case "by reason of the payment by him to one C. D. Brooks of the sum of seventy-five dollars, by voucher No. 1817, issued for the disbursement of general funds of Coffee County, Georgia, said payment having been made by the said N. E. Holton without authority previously granted by the board of county commissioners of said county, without any authorization by the superior court of said county, and not as legitimate, contingent expense authorized by law or otherwise;" also because said Holton as commissioner paid the sum of $10 to a photographer for pictures made of the body of the deceased, to be used in the case against the defendant; and also because another named juror was thus related to Arthur Vickers, who as "adviser" to the board of commissioners made the payments indicated. It is averred that the movant had no knowledge, and by the exercise of ordinary diligence could not have known, of said payments or of said relationships before or during said trial. Pretermitting any discussion or ruling on the question of whether or not the assignment of error in the bill of exceptions, in so far as these two last-named grounds of the motion be sufficient, in that the exception is merely general and fails to set forth any abuse of discretion in determining the questions of both law and fact (see *Eubanks* v. *Griffin Investment Co.,* 162 *Ga.* 717, 134 S. E. 760, and cases cited), we think that neither of these grounds is meritorious. Even if the language employed as to the payments indicated could be taken as sufficient to show that the parties making them thereby assumed the status of prosecutors, the judge was authorized to find that one of the defendant's attorneys of record knew of such payments, and that the other attorney knew of Holton's relationship to the juror. As to the relationship to Vickers, who was merely an "adviser" of the commissioners and without any sort of authority, the relationship of prosecutor could in no event be inferred.

18. We have considered and dealt with each of the grounds of the motion, which the capable and diligent counsel for the defendant have presented and argued, and on a consideration thereof, together with the well-prepared brief for the State, we find no error such as would justify setting aside the verdict of the jury.

*Judgment affirmed. All the Justices concur.*