## DAVIS et al. v. ARTHUR et al.

1. Mandamus is a proper remedy for citizens and taxpayers of a county to compel jury commissioners to make up a jury-list as provided by law.

2. Neither the constitutional provision (Civil Code § 6546) that the General Assembly shall provide by law for the selection of the most experienced, intelligent, and upright men to serve as grand jurors, and intelligent and upright men to serve as traverse jurors, nor the statute (Penal Code, § 819) passed in pursuance thereof, requires that every person possessing the qualifications for jury service shall be included in the jury-list.

3. The statute (Penal Code, § 819) is mandatory that the number of persons selected from the jury-list to serve as grand jurors shall not exceed two fifths of the whole number selected for jury service.

4. The facts upon which applicants base their claim to the remedy of mandamus against public officers for failure to discharge their duties must be positively alleged in the petition; it is not sufficient to plead evidentiary facts as affording a conclusion of the ultimate fact, where such ultimate fact is not a necessary deduction from such evidentiary facts.

5. The inclusion in the jury-list of five names which did not appear on the tax-receiver's list is not such a vital irregularity as to invalidate the whole revision.

6. The acts of the jury commissioners, according to the allegations of the petition, did not contravene any of the constitutional provisions referred to in the petition.

　　　NOVEMBER 13, 1912. REHEARING DENIED DECEMBER 13, 1912.

Petition for mandamus. Before Judge Frank Park. Dougherty superior court. September 26, 1912.

Certain citizens and taxpayers of Dougherty county filed a petition for mandamus against the jury commissioners of that county, alleging as follows: In the last jury revision, notwithstanding there were more than 1,300 persons from which to select the grand and traverse juries, a large majority of whom were intelligent and upright within the meaning of the constitution of the State, only 262 were selected for jury service; of which number 109 were selected as grand jurors. The last jury-list contained 600 names. Two of the grand jurors selected are disqualified from service, by reason of being county commissioners; some are members of the Albany Guards, and others are over 60 years of age; and if these exemptions are claimed, the number of grand jurors left will be so small as to make jury service burdensome, as the superior court has two sessions each year, and the city court of Albany convenes monthly, and the proper facilitation of the business of the courts will be hampered. Under the law only two fifths of the persons selected for jury service can serve on the grand jury, and the number selected for the grand jury is in excess of the statutory limit. The persons selected for jury service represent only about one tenth of the property interests of the county, although the grand jury is charged by law with most responsible duties relating to the management of county affairs and fixing the rate of taxation. There were 100 men competent for jury service who were of the Jewish religion, and yet only three were selected; there were 95 men of the Catholic faith, and 100 men of the Episcopal faith, competent for jury service, and only six of the former and five of the latter were selected. Large numbers of citizens competent for

jury service are of the Baptist and Presbyterian faiths, and others without church affiliations are qualified for jury service; yet from these bodies selections were made in the same proportion as were made from the first-named religious sects. Of the jurors selected one third of the traverse jurors and 40 per cent. of the grand jurors are of the Methodist religious sect, which constitutes about eleven per cent. of the citizens of the county. Three of the five jury commissioners are Methodists, and one has a son-in-law who is an active member of that church. "Your petitioners aver, therefore, in view of the foregoing allegations, which they stand ready to prove, that a large number of the citizens of said county, possessing all qualifications required by law for jury duty, have been excluded because they form a class of persons holding to a particular religious belief; your petitioners further aver, in view of the foregoing allegations, that a large number of names placed in said jury-box were included because they form a class of persons holding to a particular religious belief, to wit, the same religious belief and denomination of a majority of said jury commissioners." Seven of the names of the jurors selected do not appear on the books of the tax-receiver; and on information and belief it is charged that the jury-list was not prepared by the jury commissioners from the tax list, but was prepared from the registration list, and that the revision was done in a perfunctory manner after a comparison with the registration list, from which petitioners charge upon information and belief that the jury commissioners had in advance prepared a list of jurors. "In view of the foregoing allegations your petitioners charge, upon information and belief, that a large number of the citizens of said county were excluded because they entertain views, on matters not affecting the good order of the community or the preservation of the public morals, different from a majority of the jury commissioners, and that a large number of the names placed in said jury-box was included because they entertain views, on matters not affecting the good order of the community or the preservation of the public morals, different from those whose names were left out of the jury-box, and who hold views on said matters like a majority of said jury commission." In view of the foregoing facts and others which petitioners stand ready to prove, the jury commissioners have not acted fairly and impartially as required by law, but they have

acted arbitrarily and capriciously, and have grossly abused the discretion reposed in them under the law. As an instance of such action, it is shown that none of the descendants of the founder of Albany, and of several other men of prominence in former days, are represented on the jury. All of the acts of the jury commissioners were in violation of the constitutional provisions, viz., that no person shall be deprived of life, liberty, or property except by due process of law; that every person charged with an offense against the laws of the State shall have a public and speedy trial by an impartial jury; that every man shall have the right to worship God according to the dictates of his own conscience, without interference; that no inhabitant of this State shall be prohibited from holding office or a position of public trust on account of his religious opinions; that the right of trial by jury shall remain inviolate, and that the General Assembly shall provide by law for the most experienced, upright, and intelligent men to serve as grand jurors, and intelligent and upright men to serve as traverse jurors; and such acts were also in violation of statutes passed in pursuance of the two provisions last stated; and they were further violative of the 14th amendment to the constitution of the United States. It is to be distinctly understood "that the foregoing allegations are not made or intended to be made as a reflection upon the Methodist denomination." A demand has been made upon the jury commissioners to meet and revise the jury-list as required by law, and they have failed and refused so to do.

At the hearing a general demurrer was sustained, and the petition was dismissed as being insufficient in law.

*Pope & Bennet, Mann & Milner,* and *I. J. Hofmayer,* for plaintiffs.

*J. W. Walters, Dan Redfearn, R. J. Bacon,* and *R. H. Terrell,* for defendants.

EVANS, P. J. (After stating the foregoing facts.)

1. The propriety of the remedy of mandamus is raised by the demurrer. "All official duties should be faithfully fulfilled; and whenever, from any cause, a defect of legal justice would ensue from a failure or improper fulfillment, the writ of mandamus may issue to compel a due performance, if there be no other specific legal remedy for the legal rights." Civil Code, § 5440. Where there

is no other adequate, speedy, and effective remedy, mandamus will lie to prevent a failure of justice, upon reasons of public policy, to preserve peace, order, and good government, correct official inaction, and enforce official function. 26 Cyc. 168. If the jury commissioners had failed to act at all, it is clear that they could be compelled to act, and the appropriate remedy would be by mandamus to compel official action. If they should act in palpable violation of the law, that would be equivalent to non-action. But it is said a specific and adequate remedy is afforded by section 818 of the Penal Code. That section says that on the failure of the jury commissioners to act, the judge of the superior court shall order a revision. The initiative of this remedy is with the judge. Taxpayers and citizens may as matter of favor petition the judge to require the jury commissioners to act, but as matter of law and of right they are not given this privilege, and have no redress against any refusal of the judge to comply with their request. They are vitally interested in the administration of the law by the courts, and are not to be denied the opportunity of complaining of official inaction or official misconduct directly affecting them. They should not be required to deal with each separate wrong resulting from official inaction or misconduct, when the wrongs may be prevented by requiring proper official action to be taken. It is also said that the remedy of mandamus is not available to control the performance of a discretionary act. That is true unless the discretion is grossly abused. But an official may be made to perform a discretionary act, or if in the attempted performance of a discretionary act the official grossly abuses his discretion, so as to amount to a failure to do the act as the law requires, mandamus is a proper remedy. State *v*. President and Board of Directors, 134 Mo. 296 (56 Am. St. R. 503, 35 S. W. 617).

2. The constitution of Georgia (Civil Code, § 6546) declares that: "The General Assembly shall provide by law for the selection of the most experienced, intelligent, and upright men to serve as grand jurors, and intelligent and upright men to serve as traverse jurors. Nevertheless the grand jurors shall be competent to serve as traverse jurors." In pursuance of this constitutional mandate the General Assembly has enacted (Penal Code, § 819): "The jury commissioners shall revise the jury-list, and shall select from the books of the tax-receiver upright and intelligent men to

serve as jurors, and shall write the names of the persons so selected on tickets, as required by law. They shall select from these a sufficient number, not exceeding two fifths of the whole number, of the most experienced, intelligent, and upright men to serve as grand jurors, whose names they shall write upon other tickets." It is contended that the constitutional requirement is that all persons qualified for jury service shall be placed on the jury-list. We do not think so. The constitutional demand is for a jury-list composed of upright nad intelligent men; not that every upright and intelligent man be included in the list. Otherwise there could be no exemptions, and every upright and intelligent man must needs be placed on the jury-list to make it legal. Under the constitution and law it is the sound legal judgment of the commissioners which controls in the number of grand and traverse jurors to be selected. *Thomas* v. *State,* 67 *Ga.* 460; *Wilson* v. *State,* 69 *Ga.* 224; *Rawlins* v. *State,* 124 *Ga.* 38 (52 S. E. 1)

3. The statute set out in the preceding aivision is mandatory that the jury commissioners shall not select exceeding two fifths of the names on the traverse-jury list for the grand-jury list. The traverse-jury list contained 262 names, and the number selected for the grand jury is five in excess of the statutory limit. Petitioners have the right by mandamus to compel the jury commissioners to make this reduction.

4. We come now to a consideration of the allegations upon which petitioners base their right to a new revision. These allegations contain many averments of facts from which the inference is sought to be drawn that the jury commissioners acted arbitrarily, capriciously, and with the intent to revise the jury-list not in accord with the law, and that persons competent and eligible for jury service were excluded because of their religious affiliations, and because they entertain views on matters (not affecting the good order of the community or the preservation of public morals) different from a majority of the jury commissioners. But such inference is not the necessary or only conclusion to be drawn from these allegations. They contain a statement of evidentiary facts, upon proof of which they seek to establish the ultimate fact. The ultimate fact, however, is not a necessary consequence. To illustrate: where the grand jury discharges so many important functions in the management of county affairs, in the development of in-

ternal improvements, in the levy of taxes, and the like, it would seem that men of affairs, of experience, and of property, who are upright and intelligent, should not be arbitrarily excluded from the jury; and on the surface it might appear strange that only ten per cent. of the property in the county was owned by those selected by the jury commissioners for jury service. Yet wealth is not the test of intelligence and uprightness; and besides, petitioners leave us in ignorance as to how much of the property in the county is owned by corporations, females, minors, and non-residents. The facts alleged furnish too inconclusive criteria for the inference sought to be drawn. Again, the inference is sought to be made that jurors were selected on account of their religious faith. No positive charge is made that the jury commissioners arbitrarily selected or rejected any juror solely on account of his religious faith. Nor is there one word against the competency of the jurors selected, and the petitioners disclaim any reflection on the Methodist denomination. It may be only a coincidence that one denomination was given a preference over others in the matter of numbers. Certainly it does not follow as a matter of course, from this numerical difference, that the commissioners were applying an improper test as to uprightness and intelligence.

It must be borne in mind that this proceeding is against public officials, based on alleged official misconduct. There is always a prima facie presumption in favor of the good faith of the officer, and he who assails his official acts by employing the remedy of mandamus must prefer specific charges. The authorities concur in stating the rule of pleading in mandamus proceedings to be that the allegations of the petition must be positive, and not on information and belief; that the facts must be pleaded with certainty. The ultimate facts upon which the right to the writ of mandamus is based should be alleged. Allegations of evidentiary facts tending to establish the ultimate fact, but which do not furnish a conclusive inference of the ultimate fact, are insufficient to excuse the absence of a positive allegation of such ultimate fact. 26 Cyc. 428 et seq. We therefore think that the allegations are insufficient to charge official misconduct or gross abuse of official discretion.

5. We do not think the absence of five names from the tax-receiver's list, where it appears that they were on the registration

list, is sufficient cause to invalidate the revision, or to show gross abuse of discretion by the commissioners.

6.  Manifestly the constitutional questions raised in the petition, under our construction of it, can not arise in the present case.

*Judgment affirmed, with direction.   All the Justices concur.*