AVERY *v.* THE STATE.

No. 17810. Argued March 11, 1952—Decided April 14, 1952—
Rehearing denied May 14, 1952.

120

*Frank M. Gleason, Geo. P. Shaw,* for plaintiff in error.

*Eugene Cook, Attorney-General, J. R. Parham, Assistant Attorney-General, John W. Davis, Solicitor-General, Paul Webb, Solicitor-General, Carl Copeland, Robert E. Coker, Charlie O. Murphy,* contra.

CANDLER, Justice. (After stating the foregoing facts.)  1. We will first consider and dispose of the questions raised by the defendant's challenge to the array of grand jurors in Walker County.

(a) The Constitution of this State by article 6, section 16, paragraph 2, declares that "The General Assembly shall provide by law for the selection of the most experienced, intelligent and upright men to serve as grand jurors, and intelligent and upright men to serve as traverse jurors.  Nevertheless, the grand jurors shall be competent to serve as traverse jurors.  The General Assembly shall have the power to require jury service of women also, under such regulations as the General Assembly may prescribe."  Except as to the above last-quoted sentence, the Constitution of 1877 required and provided for the same.  As its compliance with this constitutional mandate, the General Assembly has provided for the selection of grand and traverse jurors by a board of six jury commissioners in each county.

Code, § 59-101. These jury commissioners are required to revise the jury lists biennially, or, if the judge of the superior court shall direct, triennially on the first Monday in August, or within 30 days thereafter. They must select from the books of the tax receiver upright and intelligent men to serve as jurors, and from these they are required to select a sufficient number, not exceeding two-fifths of the whole number, "of the most experienced, intelligent and upright men to serve as grand jurors." The entire number as first selected, including those afterwards selected as grand jurors, shall constitute the body of traverse jurors for the county. Code, § 59-106. The Constitution does not require that all upright and intelligent men shall be selected as jurors. It merely fixes the qualification of a juror, and leaves to the General Assembly the question as to whether all such persons or a lesser number shall be selected. The law passed by the General Assembly for the purpose of carrying into effect the constitutional provision respecting the selection of jurors does not require that all persons possessing the constitutional qualification shall be selected. It reposes in the jury commissioners not only the authority to determine what men have these qualifications, but how many of such men shall be selected for jury duty in the county. Our constitutional demand is for a jury list composed of upright and intelligent men—not that every upright and intelligent man be included in the list—and from this list grand jurors must be selected. Accordingly, it cannot be held that Code § 59-106, which provides for the selection of grand and traverse jurors exclusively from the books of the tax receiver—his tax digest—is violative of our Constitution because it does not also permit the board of jury commissioners to select grand and traverse jurors from among those men who make no tax returns. See, in this connection, *Wilson* v. *State*, 69 *Ga.* 224; *Rawlins* v. *State*, 124 *Ga.* 31 (52 S. E. 1); *Davis* v. *Arthur*, 139 *Ga.* 74 (76 S. E. 676), affirmed in 201 U. S. 638 (26 Sup. Ct. 560, 50 L. ed. 899, 5 Ann. Cas. 783); *Cady* v. *State*, 198 *Ga.* 99 (31 S. E. 2d, 38). Our statute, embodied in § 59-106 of the Code, does not, for the reason assigned, violate section 1 of the Fourteenth Amendment to the Constitution of the United States. Strauder *v.* West Virginia, 100 U. S. 303 (25 L. ed. 664). In Strauder's case the court said: "We do not say that within the

limits from which it is not excluded by the amendment, a State may not prescribe the qualifications of its jurors, and in so doing make discriminations. It may confine the selection to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications. We do not believe the 14th Amendment was ever intended to prohibit this." It is not contended in this case that the challenged grand jurors did not themselves possess the required constitutional qualifications.

(b) The Code (Ann.), § 59-101, provides: "There shall be a board of jury commissioners, composed of six discreet persons, who are not practicing attorneys at law nor county officers, who shall hold their appointment for six years, and who shall be appointed by the judge of the superior court. . . The judge shall have the right to remove said commissioners at any time, in his discretion, for cause, and appoint a successor: Provided, that no person shall be eligible or appointed to succeed himself as a member of said board of jury commissioners." While conceding the constitutionality of this section of the Code, it is alleged and argued by the defendant that it has been unconstitutionally applied in the selection of the challenged grand jurors, since no negro has ever been appointed to membership on the Walker County board of jury commissioners, but negroes have been systematically excluded therefrom because of race and color. There is no merit in this. Otherwise, the Supreme Court of the United States would, for the same reason, be disqualified to review the defendant's case should it ever reach that court.

(c) There is no merit in the contention that the challenged grand jurors were incompetent to serve as such because the clerk of the superior court failed to prepare and certify a proper jury list or the jury book which the statute requires him to make out and keep in his office. These grand jurors, presumptively, were drawn regularly from the grand-jury box. There is nothing in the record indicating anything to the contrary; and it is well settled in this State that jurors, legally selected and regularly drawn from the jury box, are not rendered incompetent to serve because of any irregularity in the preparation of jury lists or the keeping of a jury book. *Carter* v. *State,* 56 *Ga.* 463; *Crawford* v. *State,* 81 *Ga.* 708 (8 S. E. 445); *Washington* v. *State,* 122 *Ga.* 735 (50 S. E. 920).

2. In his challenge to the array of traverse jurors in Fulton County the defendant made the same attack upon the constitutionality of Code § 59-106, the same charge respecting an unconstitutional application of Code § 59-101, and the same complaint respecting the preparation of jury lists and the keeping of a jury book as were made by him in his challenge to the array of grand jurors in Walker County. Those questions are fully dealt with and disposed of in the preceding division of the opinion adversely to the defendant's present contention, and our rulings upon them need not be repeated, it being sufficient to say that they afford no sufficient ground of objection to the array of traverse jurors put upon the defendant in Fulton County. But, as to the remaining questions raised by the defendant's challenge to the array of traverse jurors in Fulton County, we hold:

(a) There is no merit in the contention that the traverse jurors put upon the accused were incompetent to serve because the number of colored men selected for traverse jury service was excessively small, and because, in proportion to the numbers of white and colored taxpayers in Fulton County, the respective numbers of white and colored men selected for traverse-jury service were excessively disproportionate, and so much so as to show an arbitrary and systematic exclusion of upright and intelligent colored taxpayers from jury service because of race and color. Jury service is not a right or a privilege, but is a burden which the State summons certain of its citizens to bear, and upon no basis is apportionment of jury duty required by the Constitution, the law, or any decision which we have been able to find. The record shows that Fulton County in 1950 had a total population of 671,797, of which 505,983 were white and 165,814 were colored people; that tax returns were made in 1950 by 105,035 white and 17,736 colored taxpayers of that county; and that the jury commissioners by their last revision of the jury lists placed the names of 20,509 white and 1115 colored jurors upon the traverse jury list. From this information, unaided by other facts, we cannot say that the jury commissioners have arbitrarily and systematically excluded upright and intelligent colored men from traverse-jury service because of their race and color, as contended. For a more thorough discussion of this question, see *Watkins* v. *State*, 199 *Ga.* 81 (33 S. E. 2d, 325), and the cases there cited and dis-

cussed by Mr. Justice Grice, who prepared the opinion for the court. The ruling here made is not in conflict with *Crumb* v. *State*, 205 *Ga.* 547 (54 S. E. 2d, 639).

(b) In revising the jury lists or jury boxes, the jury commissioners are required to write the name of each person selected for jury duty on a ticket, and "place the tickets containing the names of grand jurors in a box to be provided at the public expense, which box shall contain compartments marked number 'one and two,' from which grand jurors shall be drawn, and the jury commissioners shall place the tickets containing the names of traverse jurors in a separate box, from which traverse jurors shall be drawn." Code, §§ 59-106, 59-108. And while the statute does not say so, its manifest intention is that the tickets shall be of uniform size and color, so as to make discrimination impossible in the drawing of jurors; and, where not so done, this is prima facie evidence of discrimination, and, if nothing else appeared, would require a reversal. In this case, however, it is not charged or contended that any discrimination was practiced in drawing the challenged jurors; and the judge who drew them, as .a witness for the accused, testified there was in fact none. Therefore, the practice of placing the names of white and colored jurors in the jury box on tickets of different colors did no harm in this instance, and consequently furnished no sufficient objection to the jurors challenged by the accused.

3. The first and second grounds of the amendment to the motion for new trial complain of the court's failure to grant a mistrial, on motion of the defendant's counsel therefor, because while Mrs. Hollingsworth, the prosecutrix, was testifying she stated: "As to what effect the blows on the head had on me, well, I was not addled and I was not knocked out by the blows. I was just nervous and didn't have any hopes of ever getting back in the house to my children alive." Also: "Prior to this intercourse up there at the toilet I struggled all I could against him and he got the best of me. I screamed and hollered, I began hollering before he got me out of the door. I kept on hollering for a good long while. I said, 'It is James Avery', as hard as I could. I was nervous and torn up and knew that he had already killed. . ." These statements, as the record shows, were made voluntarily by the witness and not in response to any question

propounded. That they were highly prejudical was the ground upon which the defendant moved for a mistrial. The court, as to the first statement, said to the jury: "I am going to rule that out, any hopes that she had in the case, anything she testified to about what she hoped. That does not have any place in the case, gentlemen of the jury, and I instruct you not to consider that at all." And, concerning the second statement, the court gave the following instruction: "Gentlemen of the jury, about three minutes ago the witness stated something about the word 'killed.' It was an incomplete sort of incoherent sentence that she spoke. She never did complete that sentence. Now the court instructs you that you are to obliterate altogether from your mind the word 'killed' or anything that may be connected with that word. That incomplete sentence that she was about to utter or was in the act of uttering has absolutely no place at all in the trial of this case. Now I want to make that clear that the court has instructed you not to consider at all that incomplete statement which the witness was making." It is true that impressions may be sometimes created because of statements volunteered by a witness, which may be of such kind and character that their prejudical effect cannot be taken away. The trial judge has the responsibility of seeing that the rights of the defendant as well as the rights of the State are protected, and is given a broad discretion; and that discretion will not be interfered with except in cases where it is apparent that the prejudice to the defendant has not been removed. In this case we think that the injury complained of was effectively removed by the court's action; and, accordingly, no abuse of discretion is shown. These two grounds of the motion afford no sufficient cause for a new trial.

4. Special grounds 3, 4, and 5 of the motion allege that the court erred in allowing in evidence, over objection, photographs of the head, face, and knees of the prosecutrix, which were taken, as the evidence shows, on Tuesday after the alleged offense of rape is charged to have been committed on the Sunday night before; and the oral testimony of two witnesses, which was to the effect that the photographs correctly portrayed the scratched and bruised condition of Mrs. Hollingsworth's body at the time they were made. These photographs and the oral evidence ob-

jected to were relevant, material, and clearly admissible. It was proper to allow them. See, in this connection, *Franklin* v. *State*, 69 *Ga.* 36 (1) (47 Am. R. 748); *Johnson* v. *State*, 158 *Ga.* 192 (2) (123 S. E. 120); *Weaver* v. *State*, 199 *Ga.* 267 (3) (34 S. E. 2d, 163). To exclude evidence of this character on the ground that it would inflame the minds of the jury, would prevent the State from establishing facts material to the issue. A relevant and material fact is not subject to an objection that it would inflame the minds of the jury.

5. The sixth special ground of the amended motion for new trial complains of the court's failure to grant a mistrial, on motion of the defendant's counsel therefor, because during the trial and while Mr. Coker was making an argument to the jury for the State, Mrs. Hollingsworth, the prosecutrix, made an outcry in the courtroom, in the presence and hearing of the jury, which allegedly was improper and highly prejudicial to the defendant's case. As to this, and so far as it need be stated, the record shows:

"The Court: Let me do this, let the court interpose these facts for the purpose of the record. I did hear an audible sound in the courtroom. Mrs. Hollingsworth, the prosecutrix, was sitting on the first bench, I believe that is correct, outside of the railing of the courtroom, and I heard one audible sudden cry, which in my best judgment probably came from her and that was all that I heard, and I immediately sent the jury out upon Mr. Gleason making a motion or intimating that he wanted to make a motion. The jury was then immediately sent out of the courtroom. Now, gentlemen, does that fairly and accurately state the situation?

"Mr. Davis (the Solicitor-General): Yes.

"Mr. Gleason: I would like to state in my place, or I will be glad to be sworn if the State wants it that way, as counsel for the defendant serving under appointment by the court, that I was seated in my chair during the argument of Mr. Coker, special prosecuting counsel, to the jury; that Mrs. Hollingsworth was seated on the front seat outside of the bar, which I would estimate to be twenty feet from the end of it, which I would estimate to be seventeen feet from the end of the jury box; that Mr. Coker, while waxing eloquent in an oratorical vein with an argument tending to arouse the feelings of an ordinary human being, including perhaps the judge, the jury, and counsel for the defend-

ant, caused Mrs. Hollingsworth to make an audible outcry that was audible to counsel for the defendant as well as the court. I immediately looked around. I noticed that Mrs. Hollingsworth had her hands over her face. She was crying in an audible manner that I heard, seated next to the lady who now appears on the first row of the bench outside the bar; that I looked at the jury and I saw two members of the jury looking at Mrs. Hollingsworth. I immediately got up and made the motion. I'll be glad to be cross-examined on any matter of that statement.

"The Court: You agree the entire incident occurred in a second or two, I think.

"Mr. Gleason: Yes, I think that is a fair statement.

"Mr. Davis: I would like to say for the purpose of the record, and I will be subject to cross-examination, on hearing a slight outcry in the rear of the courtroom, I looked around and the prosecutrix had her hand to her mouth as she did several instances yesterday. That was my view, it might have been sometime after Mr. Gleason's, I don't know.

"The Court: Gentlemen, it is certainly the intent and desire of this court to see that the defendant has a fair and impartial trial as he is entitled to have under the law; however, the court is of the opinion that this slight outburst is not calculated to and did not, in the opinion of the court, prejudice any of the rights of the defendant in the case, so I am going to overrule the motion for mistrial.

"Mr. Gleason: In that connection now, will Your Honor order the prosecutrix to remain out from the hearing in the presence of the jury so there will not be a re-occurrence? Will Your Honor admonish the jury to utterly disregard that outburst on her part?

"The Court: Yes, I will follow your recommendations in both of those instances, and I am going to require the prosecutrix to remain out of the courtroom. Mr. Sheriff, I want you to be sure she remains out of the courtroom during the remainder of this trial.

"Mr. Gleason: And Brother Shaw (George Paul Shaw, of counsel for defendant) suggests that I ask Your Honor to add to the admonition that the outcry was improper conduct." The jury was then returned to the courtroom and instructed as follows:

"The Court: Gentlemen of the jury, a few minutes ago in this courtroom there was a slight outcry made on the part of Mrs. Hollingsworth, the prosecutrix in this case. Now the court instructs you that that conduct was highly improper. The court further instructs you that you are to try this case solely from the evidence and from the sworn testimony which has been introduced in the trial of this case, and the defendant's statement. The court instructs you that you are to completely disregard and erase completely from you minds that incident which I have just referred to. That incident has absolutely no place at all in the trial of this case, and I want to make it perfectly clear to each of you gentlemen on the jury that you are to completely and entirely erase from your minds and memory that incident. I think that is perfectly clear."

It is undeniably the right of every person accused of crime in this State to have a fair and impartial trial, free from any demonstration or disorder of a nature calculated to affect prejudicially the jurors trying his case. *Patton* v. *State*, 117 *Ga*. 230, 237 (43 S. E. 533). But, in the circumstances of this case, we are not prepared to say that the refusal of the trial judge to declare a mistrial was erroneous. See *Clements* v. *State*, 123 *Ga*. 547 (51 S. E. 595) ; *Brown* v. *State*, 148 *Ga*. 264 (96 S. E. 435). Compare *Glenn* v. *State*, 205 *Ga*. 32 (52 S. E. 2d, 319). Motions of this character are addressed to the discretion of the trial judge; and, unless it can be shown that such discretion has been abused and some positive injury done by the occurence complained of, the discretion of the trial judge will not be controlled. *Inman* v. *State*, 72 *Ga*. 269; *Purvis* v. *Atlanta Northern Ry. Co.*, 145 *Ga*. 517 (89 S. E. 571). We are not authorized by the facts concerning the occurrence complained of to say that the trial judge abused his discretion in denying the defendant's motion for a mistrial. To the contrary, we do not think that he did.

6. Error is assigned because the court refused to declare a mistrial on account of certain language employed by Mr. Coker, of counsel for the State, in his argument to the jury, it being alleged that his argument was not authorized by the evidence, and that it prejudiced the minds of the jury against the defendant. The remark complained of was "We are not going to have our women beaten and you put a stop to this." The motion to

declare a mistrial was denied by the trial judge, who directed offending counsel to confine his remarks to the case on trial, the evidence, and the defendant's statement. The remark, allegedly improper, was not of such a character as to require the granting of a new trial upon the ground that the court erred in refusing a mistrial at the time the remark was made. See *Dickerson* v. *State,* 121 *Ga.* 136 (48 S. E. 942). Accordingly, there is no merit in special ground 7 of the motion.

7. The court charged as follows: "Gentlemen, if you believe that a crime was committed as charged in this bill of indictment, but you do not believe that this defendant committed the crime, if you believe such crime was committed, or if you should have a reasonable doubt as to whether he committed the crime, it would be your duty to give him the benefit of the doubt and acquit. In other words, gentlemen, before you could convict this defendant, you must first believe that a crime was committed as charged in the bill of indictment, and you must also believe beyond a reasonable doubt that this defendant is the person who committed that crime. If you have a reasonable doubt as to the defendant's guilt, it is your duty to give him the benefit of that doubt and acquit him." Special ground 8 complains of the court's failure to give also, on written request, the following instruction: "I charge you that on a trial for rape the identification of the accused as the person who committed the offense is of paramount importance and must be established beyond a reasonable doubt." This ground of the motion is without merit. The court is not required to give a requested charge, when as here, it is argumentative in character. *Taylor* v. *Taylor,* 195 *Ga.* 711 (8) (25 S. E. 2d, 506).

8. Error is assigned, in special ground 9 of the amended motion for new trial, on the court's refusal to give the following timely requested charge: "I charge you that the credit to be given the testimony of the prosecutrix depends, more or less, on the concurrence of circumstances with her testimony; for instance, if she be of good fame, if she presently discovered the offense, made pursuit after the offender, and showed circumstances and signs of the injury. But if she concealed the injury for any considerable length of time after she had an opportunity to complain, if the place where the fact was supposed to be committed was near

inhabitants or places of common recourse or passage, and she made no outcry when the fact was supposed to be done, where it is probable that she might have been heard by others, these and other like circumstances carry a strong presumption that her testimony is false or feigned." In the circumstances of this case, refusal to give the requested charge was not error. A request to charge should not be given, though abstractly correct, when not properly adjusted to the facts of the case. *Brannon* v. *State*, 140 *Ga.* 787 (80 S. E. 7); *Holton* v. *State*, 137 *Ga.* 86 (4) (72 S. E. 949); *Rouse* v. *State*, 136 *Ga.* 356 (71 S. E. 667). In this case the defendant offered no evidence, but by his statement sought to set up the defense of alibi. There was no evidence showing or tending to show that the prosecutrix was a woman of bad character, or that she failed to presently discover the offense and pursue her assailant. To the contrary, it appears in substance from the State's evidence: that the accused, at night and while intoxicated, went to the home of the prosecutrix where she and several small children were alone; that he broke open a door, seized the prosecutrix, pulled her out in the yard some short distance from the house, and had intercourse with her forcibly and against her will; that she screamed and hollered at the time of the assault until she was "unable to utter a word"; that her fourteen-year-old son, who was not at home when the accused entered, and a negro man came up while the accused had her on the ground; that the accused then jumped up and ran; that she at that time told her son about the occurrence; that the affair was immediately reported to the officers; that she was carried to a hospital for treatment, her body being badly scratched and bruised; that the accused was arrested during that night, shortly after the assault, and on being brought before her at the place to which she had been carried for treatment was positively identified by her as her assailant. See *Teague* v. *State*, 208 *Ga.* 459 (67 S. E. 2d, 467).

9. The remaining special ground of the motion for new trial alleges that the court erred in failing to charge, without request, upon the defendant's defense of mistaken identity. As to this, the charge as given was sufficient in the absence of a written request for more specific instructions on the subject. Accordingly, there is no merit in this ground.

10. The verdict is amply supported by evidence, and no reason appears for interfering with the discretion of the trial judge in refusing a new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, P.J., and Wyatt, J., who dissent. Head, J., concurs specially.*

HEAD, Justice, concurring specially. There is neither constitutional nor statutory authority for the use of different colors of paper in placing the names of colored jurors in the jury box. This practice could serve only one purpose, to wit, discrimination in the drawing of the names of colored jurors from the box. Prima facie such practice is wrong and should be discontinued at the first opportunity to revise the jury list. The testimony of Judge Moore as to the method in which the jurors are drawn is sufficient to show that the defendant was not harmed in this case, since there was no discrimination against colored jurors in the selection of the traverse jurors.

WYATT, Justice, dissenting. I can not agree with the ruling in subdivision (b) of division 2, for the reason, in my opinion, that this practice is conclusive evidence of discrimination, and for that reason the case should be reversed.

I am authorized to say that Presiding Justice Atkinson joins me in this dissent.