### 18527. HEARD *v.* THE STATE.

HAWKINS, Justice. 1. The motion to quash the indictment in this case, based upon grounds which are proper matters for challenge to the array of the grand jurors, was properly denied by the trial judge, it appearing from the record that the defendant was arrested and placed in jail on September 7, 1953, that counsel for the defendant were present and participated in a commitment trial of the defendant on September 11, 1953, involving the offense for which the indictment was returned on September 15, 1953, and, therefore, that the defendant and his counsel had ample notice and opportunity to present such grounds by a challenge to the array of the grand jury. *Turner* v. *State,* 78 *Ga.* 174, 177 (1); *Fisher* v. *State,* 93 *Ga.* 309 (20 S. E. 329); *Edwards* v. *State,* 121 *Ga.* 590 (2) (49 S. E. 674); *Folds* v. *State,* 123 *Ga.* 167 (51 S. E. 305); *Tucker* v. *State,* 135 *Ga.* 79 (68 S. E. 786); *Harris* v. *State,* 191 *Ga.* 243, 249 (5) (12 S. E. 2d 64).

2. A Negro, or a member of any other race, who is on trial is not entitled to a mixed jury composed of members of his own race and members of the white race, and the arbitrary, systematic, and purposeful exclusion of members of his race from his jury cannot be inferred merely from the fact that no one of that race is on such jury. No such right to a mixed jury is guaranteed by the due-process and equal-protection clauses of either the Constitution of the United States or of this State. Neal *v.* Delaware, 103 U. S. 370 (26 L. ed. 567); Gibson *v.* Mississippi, 162 U. S. 565 (16 Sup. Ct. 904, 40 L. ed. 1075); Martin *v.* Texas, 200 U. S. 316 (26 Sup. Ct. 338, 50 L. ed. 497); *Watkins* v. *State,* 199 *Ga.* 81 (33 S. E. 2d 325); 31 Am. Jur. 619, § 86.

3. The manner and methods prescribed by statute in this State for the selection of names of persons to be placed in the petit jury box and to serve on the petit jury are fully discussed in the opinions of this court in *Watkins* v. *State,* supra, and *Avery* v. *State,* 209 *Ga.* 116 (70 S. E. 2d 716), and what is there said and held need not be repeated here. Applying the rulings there made to the facts of the instant case, the trial court was authorized to find that there had been no arbitrary, system-

atic, and purposeful exclusion of or discrimination against members of the Negro race in the selection and impaneling of the petit jurors placed upon the defendant, and to overrule the defendant's challenge to the array. Code § 59-803; *Harris* v. *State,* supra. While the *Avery* case, supra, was reversed by the Supreme Court of the United States in Avery *v.* Georgia, 345 U. S. 559 (73 Sup. Ct. 891, 97 L. ed. 1244), such reversal was solely because of the use in the jury box of slips of different colors upon which the names of white and Negro jurors were written, and no such state of facts is shown to have existed in the present case.

4. The testimony of the alleged injured female made out a case of rape against the defendant. Her testimony was corroborated by proof to the effect that the defendant was seen by others at a nearby neighbor's house shortly before the time the offense is alleged to have been committed; that the county truck which he was driving on the occasion in question was seen parked at or near the scene of the crime at the time of its alleged commission; that the female alleged to have been raped went to the home of her neighbor within a few minutes after the time the crime is alleged to have been committed, crying and highly nervous, and made a report of what had occurred; that she was carried to a hospital by a friend and members of her family where she was examined by a physician who testified that spermatazoa or male sperm was found in her vagina; and by the implied admission of the defendant by his failure to deny the statement made in his presence at the time he was carried to the sheriff's office to be placed in jail that he had raped a white woman. *Harper* v. *State,* 201 *Ga.* 10, 19 (39 S. E. 2d 45); *Lee* v. *State,* 197 *Ga.* 123 (28 S. E. 2d 465).

5. There was sufficient evidence to authorize the verdict of guilty, and the trial judge did not err in overruling the general grounds of the motion for a new trial.

*Judgment affirmed. All the Justices concur.*

Submitted March 8, 1954—Decided April 12, 1954.

*Faine Chambers, Ben F. Smith,* for plaintiff in error.

*H. G. Vandiviere,* Solicitor-General, *H. L. Buffington, Jr., Eugene Cook,* Attorney-General, *Rubye G. Jackson,* contra.

Lindsey Heard, a Negro convict, was placed in jail on September 7, 1953, charged with the offense of rape upon a white woman. Counsel were appointed for the defendant on the day preceding the holding of a committal trial, which was attended and participated in by counsel on September 11. The defendant was indicted by a grand jury of Cherokee County, Georgia, on September 15, 1953, and was tried and convicted of rape, without a recommendation of mercy, on September 24, 1953.

On the call of the case for trial, counsel for the defendant pre-

sented and filed a written motion to quash the indictment, and a challenge to the array of the traverse jurors, in which it was alleged: that for more than thirty years no member of the Negro race has served on the grand or traverse jury of said county; that the grand jury which returned the indictment and the panel of traverse jurors put upon the defendant were both composed solely of male citizens who are members of the white race; that there are numerous citizens of the county who are members of the Negro race and who are competent and legally qualified to serve as grand and traverse jurors, but that the names of these persons have been purposely and expressly discriminated against as to service by virtue of placing their names upon colored papers or by having the fact that they are members of the Negro race well known to those persons who made up the jury panels, so that they might be peremptorily rejected by those whose duty it is to draw the names of the persons who are to serve upon the juries; that the total number of names appearing on the petit jury list of said county is in excess of 826; that all of said names appearing thereon are the names of members of the white race, or if there are names of members of the Negro race upon the list, they are listed upon yellow paper or are set apart from the names of white citizens by some other means unknown to movant; that the names of the three Negro citizens who appear on the petit jury list are well known to the persons who draw the names of the various petit juries; that the systematic and purposeful discrimination against Negroes serving on the petit jury of the county and on the panel of petit jurors which is put upon the defendant is a violation of his rights under art. I, sec. I, pars. III and XXV of the Constitution of the State of Georgia, and a violation of his rights under the Fourteenth Amendment to the Constitution of the United States and of sec. 8, U. S. C. A., par. 44; that, according to the United States census for 1950, there were 19,925 members of the white race and 825 members of the Negro race who lived in said county; that there were 5,560 white male citizens 21 years of age or older, and there were 200 Negro male citizens 21 years of age or older in said county; and that the name of no Negro male citizen appears in regular form on the petit jury list of said county.

On the trial of the motion to quash the indictment and the challenge to the array of the petit jury, the defendant introduced the testimony of seven named witnesses who testified that they were residents and taxpayers of Cherokee County and had resided there for various periods of time, ranging from 20 to 49 years; and that they had never been summoned to serve and had never served on the grand or petit jury of that county. Whether these witnesses were members of the white or Negro race does not appear from the record. Certain members of the bar testified that they had never seen a Negro serve on either jury in that county, although the evidence did disclose that at least one Negro had been summoned to serve on the grand jury, but was either excused at his own request or the jury was completed before his name was reached on the list of names drawn for service at that term.

There was no evidence that the names of white and Negro jurors appearing in the jury box were placed upon slips of different color, as alleged in the challenge; but, on the contrary, the uncontradicted testimony of the clerk of the superior court was to the effect that the names of all of the jurors, whether white or Negro, appeared in the jury box on slips of the same size and color without any mark of any kind to distinguish between white and Negro jurors; that the names of jurors were drawn from the jury box by the judge of the superior court in the presence of the clerk and sheriff; that the clerk wrote down the names of the jurors in the order in which and as they were drawn, and that the jury panels, both grand and petit, were made up from these lists as thus drawn; and that no irregularity had occurred, and no discrimination had been practiced in the drawing, summoning, and impaneling of the jurors. Four of the jury commissioners were sworn as witnesses, all of whom testified that there was no discrimination by them against the Negro race in making up the lists of the jurors; that they lived in different portions of the county, and that members of the Negro race lived in only two of the sixteen militia districts of the county. The evidence further discloses that, after the revision of the jury list in 1948, there were 177 names of white persons and the name of one Negro in the grand jury box; that, after the 1950 revision, there were 221 whites and one Negro, and, after the 1952 revision, there were

303 whites and one Negro. The evidence further discloses that the tax books for the year 1952, from which the last jury revision was made, showed a total of 3,904 white male taxpayers and 82 Negro taxpayers for the entire county, and 2,604 white freeholders and 57 Negro freeholders who made tax returns, it thus appearing that only a fraction more than two percent of the taxpayers of Cherokee County are Negroes. The record discloses that the names of at least three Negro jurors appear in the petit jury box and on the petit jury list, and the evidence does not disclose the exact number of names on the petit jury list and in the petit jury box. If it should be assumed that the seven witnesses introduced by the defendant who testified that they had never served on any jury were members of the Negro race, the State introduced eight witnesses who were members of the white race, who testified that they had lived and were taxpayers in the county for periods of time ranging from 12 to 67 years, and that they had never been called to serve and had never served on either the grand or petit jury, although it further appears from the record that the names of some of these witnesses were in fact in the jury box.

To the judgment denying the motion to quash the indictment and denying the challenge to the array of jurors, the defendant excepted pendente lite and assigns error thereon in the present bill of exceptions. The defendant also filed his motion for a new trial based on the general grounds only, and to the judgment denying that motion he also excepts.