## 42662. LIVAS v. THE STATE.
### (338 SE2d 266)

HILL, Chief Justice.

Jerome Livas was indicted for the malice murder of Beatrice Brier in Muscogee County in 1977. A special plea of insanity was filed, but a jury found the defendant competent to stand trial. A second jury found him guilty of murder and he received a life sentence. He appeals.[1]

---

[1] Defendant was arrested on October 2, 1977, and was indicted in December 1977. He filed his special plea of insanity on December 15, but the jury found against his plea on March 3, 1978. He was tried on March 21, and was sentenced on March 24. He filed a motion for new trial on April 24, 1978, which was amended on May 24, 1978. A hearing was held on September 12, 1984, the transcript was filed September 28, 1984, and the motion was over-

Two children found the victim lying near the porch of a vacant house. The victim was so badly beaten she was unrecognizable and comatose. She died of the injuries to her head about a week later. A doctor testified the blows were consistent with a heavy beating by fists.

Immediately after discovery of the body, police officers were seeking to identify the victim and went to the home of Mrs. Lovie Edwards, where the victim lived. She suggested that the officer talk with the defendant, the victim's boyfriend, who happened then to be walking down the street. When approached, the defendant announced spontaneously, "I didn't do it, I wasn't the one that hit her, I didn't beat her up," and denied knowing the victim. A bystander told the officers that the defendant had dated the victim. The defendant was then asked to get in the police car. After being read his *Miranda* rights, he made a full statement to the police and then took the officer to the scene of the crime. He later made and signed a detailed written confession in which he stated that after drinking and playing pool at the Bluehaven Cafe, he walked to Mrs. Edward's house to find the victim. Mrs. Edwards told him she was at Ms. Ellen's bar. On the way there, the defendant met the victim, who was clearly intoxicated, with a man called Smiley. The defendant accosted her and slapped her several times and Smiley retreated. He then took the victim to the vacant house, which they had been to before, and had sex. The defendant then claimed that he thought about the victim being with Smiley and beat her in the face.

At trial, Smiley admitted walking the victim home but denied seeing the defendant. The defendant denied having seen the victim on the night she was beaten and testified instead that he had been drinking with one Walton all that night. Walton also testified that the defendant had been drinking with him at the Bluehaven Cafe and then had spent the night with him.

A clinical psychologist also testified for the defense that the defendant was tested as mildly retarded, but that other tests revealed he might be brighter than reflected by the IQ test.

1. Having reviewed the evidence in the light most favorable to the jury's determination, we conclude that a rational trier of fact could have found the defendant guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).[2] This enumeration of error therefore provides no ground for

---

ruled on August 15, 1985. Notice of appeal was filed that same day, August 15, 1985, and the record was docketed in this court on August 30. After briefs were filed, the case was submitted for decision on October 11, 1985.

[2] The jury was charged as to malice murder, voluntary manslaughter and involuntary manslaughter. After requesting recharge as to these three crimes, the jury found the defend-

reversal.

2. The defendant next urges that his statements should not have been admitted into evidence because he did not sufficiently understand his *Miranda* warnings. At the hearing, the detective testified that he first read him the warnings from his card and that the defendant said he understood his rights and then made an oral statement. Later at the police station, the *Miranda* warnings were repeated. When it was discovered the defendant could not read the waiver form, the officer explained the warnings in everyday language. His own doctor testified he would be able to understand his rights when explained to him in everyday language and knew he had done something wrong. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility of witnesses relating to the admissibility of a confession will be upheld on appeal. *Gates v. State*, 244 Ga. 587, 590-91 (261 SE2d 349) (1979), cert. denied, 445 U. S. 938 (1980). We find no error here.

3. The defendant also argues that the trial court erred in excluding testimony of the defendant's propensity for confessing to crimes he did not commit. At trial, he wished to elicit from a Columbus police detective that, the day after confessing to the murder in issue, the defendant had also confessed to two other murders and a rape. The trial court held that the testimony would be prejudicial to the defendant and refused to admit it. In so ruling, the trial court considered the atmosphere of the community in light of the then unsolved stocking stranglings of elderly women in the area.

In light of the defendant's spontaneous outcry when first approached by the police and the consistent story he initially related to the police and later at the police station, as well as the factual corroboration of his confessions (the beating and location of the victim), we find no abuse of discretion in the trial court's finding the confessions as to unrelated crimes to be irrelevant and in limiting testimony to the crime being tried. Given the evidence presented in the case, the trial court properly balanced the possible benefit and the potential harm to the defendant. Thus, this enumeration does not require a new trial.

*Judgment affirmed. All the Justices concur, except Bell, J., who concurs specially.*

BELL, Justice, concurring specially.

I fully concur in Divisions 1 and 2 of the opinion of the court, and in the judgment of affirmance. I agree with the result reached in Division 3 of the majority opinion, but I do not agree with all that is

said therein.

1. To begin, I take issue with the majority's finding in Division 3 that the confessions as to the unrelated crimes were irrelevant. It is, of course, the established rule in this state that trial courts have a wide latitude in determining whether evidence is relevant, and therefore admissible. " ' "The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value," Agnor's Georgia Evidence, § 10-2, p. 165; quoted in *Sprouse v. State*, 242 Ga. 831, 833 (252 SE2d 173) (1979), and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. *Patterson v. State*, 233 Ga. 724, 725 (213 SE2d 612) (1975).' *Baker v. State*, 246 Ga. 317 (3) (271 SE2d 360) (1980). However, even though our rule favors the admission of relevant evidence, the admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." *O'Neal v. State*, 254 Ga. 1, 3 (3) (325 SE2d 759) (1985).

I would hold that the trial court abused its discretion in finding the confessions as to unrelated crimes to be irrelevant. In my opinion the spurious confessions were arguably probative of appellant's propensity for confessing to crimes he did not commit, and that propensity in turn was probative of the inference that appellant's confession to the Brier murder was untrue. Although the purpose for which the spurious confessions were offered was arguably disproved by the circumstantial evidence in support of the confession to the Brier murder, that countervailing evidence did not render the spurious confessions as to the unrelated crimes irrelevant.

2. Although I would find that the confessions as to unrelated crimes were relevant, I would also hold that the trial court correctly excluded them as prejudicial.

In general, " 'relevant evidence is not subject to an objection that it might inflame the minds of the jury or prejudice the jury and this is true even where the offered evidence is only cumulative . . . The Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value.' Agnor's Georgia Evidence, § 10-2, p. 165. *Avery v. State*, 209 Ga. 116 (70 SE2d 716) (1952); *Toler v. State*, 213 Ga. 12 (96 SE2d 593) (1957); *Blount v. State*, 214 Ga. 433 (105 SE2d 304) (1958)." *Sprouse v. State*, supra, 242 Ga. at 833. But there is an exception for evidence of independent crimes. In that regard, "[i]t has long been the rule in Georgia that evidence of an independent crime is never admissible unless the prejudice it creates is outweighed by its relevancy to the issues on trial." *Robinson v. State*,

246 Ga. 469, 470 (2) (271 SE2d 786) (1980).[1]

Here, the trial court was authorized to exclude the confessions as to the unrelated crimes because, although those confessions were relevant, their probative value was outweighed by the clear danger of unfair prejudice which they posed. Therefore, inasmuch as the trial court and the majority of this court have, in my estimation, reached the right result, I concur in this court's finding that the enumeration of error considered in Division 3 does not require a new trial.

DECIDED JANUARY 8, 1986.

*H. Haywood Turner III*, for appellant.

*William J. Smith, District Attorney, Douglas C. Pullen, Assistant District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn, Staff Assistant Attorney General*, for appellee.

---

[1] In this case the independent crimes would not be the two other murders and a rape to which appellant gave spurious confessions. Instead, the independent crimes would be the spurious confessions per se for being violations of OCGA § 16-10-20, which prohibits knowing and wilful false, fictitious, or fraudulent statements or representations.